SAXA INC., Las Colinas Office Investors L.P., and Las Colinas Office Condominium Association Inc., Appellants,

v.

DFD ARCHITECTURE INC., Appellee.

No. 05–09–01245–CV.

Court of Appeals of Texas, Dallas.

April 29, 2010.

Jason Clay Spencer, R. Carson Fisk, Ford Nassen & Baldwin P.C., Austin, TX, for Appellants.

Gregory N. Ziegler, Bryan Rutherford, Alexander George Blue, MacDonald Devin, P.C., Dallas, TX, for Appellee.

Before Justices MORRIS, FRANCIS, and FILLMORE.

## OPINION

Opinion By Justice FILLMORE.

Saxa Inc. initiated an arbitration proceeding against DFD Architecture Inc. (DFD) based on a written contract containing an arbitration clause. Las Colinas Office Investors L.P. (Office Investors) [1]

---

1. Saxa was the sole owner of Shea Partners, Inc. Saxa also owned ninety-nine percent of Shea Commercial Properties, L.L.C. Shea Partners owned the remaining one percent of Shea Commercial. Shea Commercial was the sole owner of Shea Dallas Properties, L.L.C. Shea Commercial also owned ninety-nine percent of Office Investors. Shea Dallas Proper-

and the Las Colinas Office Condominium Association Inc. (Condominium Association)[2] sought to join the arbitration. DFD filed this action, requesting declaratory and injunctive relief from the trial court to prevent the joinder. DFD also requested that the trial court stay the arbitration pursuant to the Texas General Arbitration Act (TAA).

The trial court granted DFD's motion for summary judgment on its request for declaratory relief and found Office Investors and the Condominium Association are not proper parties to the arbitration. Appellants perfected this interlocutory appeal asserting (1) the trial court did not have authority to determine whether Office Investors and the Condominium Association are proper parties to the arbitration, (2) the trial court erred by admitting portions of DFD's summary judgment evidence, (3) Office Investors and the Condominium Association are proper parties to the arbitration, and (4) Saxa may assign its rights and claims under its contract with DFD. We conclude the contract between Saxa and DFD delegated the authority to determine substantive arbitrability to the arbitrator. Because the trial court erred by granting summary judgment on the issue of whether Office Investors and the Condominium Association are proper parties to the arbitration, we reverse the trial court's judgment and remand to the trial court for further proceedings.

## Background

Pursuant to a written contract, DFD agreed to design a professional office condominium complex for Saxa. Saxa and DFD agreed that "[a]ny claim, dispute or other matter in question arising out of or related to" the contract "shall be subject to arbitration." The parties further agreed any arbitration would be conducted "in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect." The contract bound Saxa and DFD, as well as their partners, successors, assigns, and legal representatives "with respect to all covenants of this Agreement," but also provided it did not "create a contractual relationship with or a cause of action in favor of a third party" against either Saxa or DFD. Finally, the parties agreed:

> No arbitration arising out of or relating to this Agreement shall include, by consolidation or joinder or in any other manner, an additional person or entity not a party to this Agreement, except by written consent containing a specific reference to this Agreement and signed by [Saxa], [DFD], and any other person or entity sought to be joined. . . . The foregoing agreement to arbitrate and other agreements to arbitrate with an additional person or entity duly consented to by the parties to this Agreement shall be specifically enforceable in accordance with applicable law in any court having jurisdiction thereof.

Saxa alleges that after the office complex was completed, the buildings were damaged by water penetration. Saxa filed an arbitration proceeding against

ties owned the remaining one percent of Office Investors. Shea Commercial entered into the contract to purchase the real property on which the project that forms the basis of Saxa's claims against DFD was built. Shea Commercial assigned that contract to Office Investors, and Office Investors closed on the purchase of the land. Saxa entered into a contract with DFD for design services for the project. Office Investors paid a number of the invoices submitted by DFD to Saxa.

2. Office Investors recorded the condominium declaration for the project. The Condominium Association became responsible for the management, maintenance, and repair of the common areas of the condominiums.

DFD and the construction contractor. Over DFD's objection, the arbitration panel allowed Office Investors to join the arbitration. The Condominium Association subsequently also sought to join the arbitration.

DFD filed a petition for declaratory judgment, request for injunctive relief, and motion to stay the arbitration under the TAA in the trial court asserting Office Investors and the Condominium Association are not proper parties to the arbitration because neither Office Investors nor the Condominium Association "has a valid or enforceable agreement to arbitrate with any other party." DFD filed a motion for summary judgment on its claim for declaratory relief on grounds Saxa and DFD were the only parties to the contract and the contract prohibited (1) joinder of third-parties to the arbitration without DFD's consent, (2) assignment of Saxa's claims under the contract, and (3) the creation of third-party beneficiaries of the contract. Saxa responded that the trial court did not have the authority to decide the issue because Saxa and DFD agreed issues of substantive arbitrability would be decided by the arbitration panel. Saxa also filed a motion for summary judgment on grounds Office Investors and the Condominium Association are proper parties to the arbitration as legal representatives or successors to Saxa or as third-party beneficiaries of the contract. The trial court denied appellants' motion for summary judgment and granted DFD's motion for summary judgment. The trial court specifically found (1) Office Investors and the Condominium Association are not proper parties to the arbitration based on the anti-joinder clause in the contract between Saxa and DFD; (2) Saxa and DFD are proper parties to the arbitration; and (3) the anti-assignment clause in the contract between Saxa

and DFD prevented Saxa from assigning its rights or claims against DFD.

Appellants sought review of the trial court's judgment by interlocutory appeal. DFD filed a motion to dismiss the appeal, asserting this Court does not have jurisdiction over a non-appealable, interlocutory order.

### Jurisdiction

■ We turn first to DFD's contention this Court does not have jurisdiction over this interlocutory appeal under the TAA.[3] DFD asserts the TAA does not provide a right to interlocutory appeal and, even if there is a right to interlocutory appeal under the TAA, the declaratory judgment signed by the trial court does not stay arbitration and, therefore, is not subject to interlocutory appeal.

■ Appellate courts have jurisdiction over final judgments and such interlocutory orders as the legislature deems appealable. *Bally Total Fitness Corp. v. Jackson*, 53 S.W.3d 352, 352 (Tex.2001) ("A party may not appeal an interlocutory order unless authorized by statute."); *Lehmann v. Har–Con Corp.*, 39 S.W.3d 191, 195 (Tex.2001). Appellate jurisdiction is never presumed. *Brashear v. Victoria Gardens of McKinney, L.L.C.*, 302 S.W.3d 542, 546 (Tex.App.-Dallas 2009, no pet.) (op. on reh'g). Unless the record affirmatively shows the propriety of appellate jurisdiction, we must dismiss. *Id.*

DFD first argues the only jurisdictional basis asserted by appellants is section 171.098(a)(2) of the TAA and that statute, on its face, does not provide for an interlocutory appeal. Section 171.098(a)(2) of the TAA allows a party to appeal an order granting an application to stay arbitration made under Section 171.023. TEX. CIV.

---

3. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 171.001–.098 (Vernon 2005).

PRAC. & REM.CODE ANN. § 171.098(a)(2) (Vernon 2005). Section 171.023 provides a trial court may "stay an arbitration commenced or threatened on application and a showing that there is not an agreement to arbitrate." *Id.* § 171.023. The Texas Supreme Court has concluded section 171.098(a)(2) provides for an interlocutory appeal of the denial of arbitration. *Chambers v. O'Quinn,* 242 S.W.3d 30, 31 (Tex. 2007) (per curiam); *Jack B. Anglin Co. v. Tipps,* 842 S.W.2d 266, 271–72 & n. 10 (Tex.1992) (orig.proceeding); *see also In re Hawthorne Townhomes, L.P.,* 282 S.W.3d 131, 137 (Tex.App.-Dallas 2009, orig. proceeding) ("A denial of arbitration under the Texas Arbitration Act may be appealed through an interlocutory appeal.").

DFD concedes Texas appellate courts have recognized that section 171.098(a)(2) of the TAA provides a right to an interlocutory appeal of an order denying arbitration, but argues those courts relied on "older versions" of the TAA. However, the relevant substantive language of the current version of the TAA is virtually identical to older versions. *See* Act of May 29, 1965, 59th Leg., R.S., ch. 689, § 1, art. 238–2, 1965 Tex. Gen. Laws 1593, 1600 (providing for an appeal of an "order granting an application to stay arbitration"). We, therefore, decline DFD's invitation to revisit the issue of whether an interlocutory appeal is available under the TAA for an appropriate order denying arbitration.

DFD next argues the order in this case does not stay arbitration but only declares Saxa's and DFD's rights under a contract that includes an arbitration clause. However, DFD sought declaratory and injunctive relief and filed a motion to stay the arbitration under the TAA on grounds it had not agreed to arbitrate with Office Investors or the Condominium Association.

The trial court declared Office Investors and the Condominium Association are not proper parties to the arbitration. It is the "substance and function of the order viewed in the context of the record that controls our interlocutory jurisdiction, not [the party's] characterization of the order." *Walker Sand, Inc. v. Baytown Asphalt Materials,* 95 S.W.3d 511, 515 (Tex.App.-Houston [1st Dist.] 2002, no pet.). The effect of the trial court's order was to stay or deny arbitration between DFD and Office Investors and the Condominium Association because there was no agreement to arbitrate. Therefore, the trial court's order falls within section 171.023 of the TAA, and we have jurisdiction to consider this interlocutory appeal pursuant to section 171.098(a)(2) of the TAA.

### Substantive Arbitrability

In their first issue, appellants assert the trial court erred by granting DFD's motion for summary judgment requesting a declaration that Office Investors and the Condominium Association are not proper parties to the arbitration because Saxa and DFD agreed that issues of substantive arbitrability would be determined by the arbitration panel. We review the trial court's decision to grant summary judgment de novo. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex.2005). To prevail on a summary judgment motion, the movant must demonstrate that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *See* TEX.R. CIV. P. 166a(c).

Saxa and DFD agreed any arbitration under the contract would be conducted in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association (the Rules). The Rules provide the arbitrator has the power "to rule on his or her own jurisdiction, includ-

ing any objections with respect to the existence, scope or validity of the arbitration agreement" and "to determine the existence or validity of a contract of which an arbitration clause forms a part." Appellants assert Saxa and DFD clearly and unmistakably delegated the issue of substantive arbitrability, including the joinder of parties, to the arbitration panel. DFD responds the issue is whether Office Investors and the Condominium Association are parties to the contract with standing to invoke the arbitration clause and the trial court had authority over this issue of contract interpretation.

■■■ Generally, the question of arbitrability is a gateway issue to be decided by a court rather than an arbitrator. *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986).[4] These "gateway matters" include whether the parties agreed to arbitrate and whether a claim or dispute is encompassed in the agreement to arbitrate. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex.2009) (orig.proceeding); *In re Weekley Homes*, 180 S.W.3d 127, 130 (Tex.2005) (orig.proceeding); *P. McGregor Enters., Inc. v. Denman Bldg. Prods., Ltd.*, 279 S.W.3d 717, 722 n. 9 (Tex.App.-Amarillo 2007, pet. denied) ("The question of [substantive] arbitrability has two aspects: first, whether the parties agreed to arbitration (or are bound by another's agreement to arbitrate); and second, whether a particular claim or dispute is within the scope of the agreement.").

■■■ The parties, however, may agree to submit matters of substantive

arbitrability to arbitration. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002); *Ernst & Young LLP v. Martin*, 278 S.W.3d 497, 500 (Tex.App.-Houston [14th Dist.] 2009, no pet.) ("[A]n arbitration clause that reallocates traditional court functions to the arbitrator is enforceable. . . ."); *ODL Servs., Inc. v. Conoco-Phillips Co.*, 264 S.W.3d 399, 413 (Tex. App.-Houston [1st Dist.] 2008, no pet.). But, "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable' evidence that they did so." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) (citing *AT & T*, 475 U.S. at 649, 106 S.Ct. 1415); *see ODL Servs.*, 264 S.W.3d at 413. Silence or ambiguity about who should decide the arbitrability issue should not lead a court to presume the parties intended for the issue to be decided by the arbitrator. *First Options*, 514 U.S. at 944–45, 115 S.Ct. 1920; *ODL Servs.*, 264 S.W.3d at 413. Rather, a court must examine the arbitration agreement to decide if, when construed under the relevant state law, the agreement evidences a clear and unmistakable intention that the arbitrators will have the authority to determine the scope of arbitration. *ODL Servs.*, 264 S.W.3d at 413.

■■■ Here, DFD and Saxa agreed that "[a]ny claim, dispute or other matter in question arising out of or related to" the contract "shall be subject to arbitration." "A broad arbitration clause, purporting to cover all claims, disputes, and other matters arising out of or relating to the con-

---

4. Although this case is brought under the TAA, the parties rely on a number of cases interpreting the Federal Arbitration Act (FAA). *See* 9 U.S.C.A. §§ 1–16 (West 2009). The issue of arbitrability is subject to a virtually identical analysis under either the FAA or

the TAA. *See ODL Servs., Inc. v. ConocoPhillips Co.*, 264 S.W.3d 399, 418 (Tex.App.-Houston [1st Dist.] 2008, no pet.) (applying same analysis of arbitrability under the FAA and the TAA).

tract, creates a presumption of arbitrability." *Am. Realty Trust, Inc. v. JDN Real Estate–McKinney, L.P.*, 74 S.W.3d 527, 531 (Tex.App.-Dallas 2002, pet. denied). Further, Saxa and DFD incorporated the Rules into their contract, giving the arbitration panel the power to rule on its own jurisdiction, including any objections to the existence, scope or validity of the arbitration agreement. When, as here, the parties agree to a broad arbitration clause and explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator. *See Haddock v. Quinn*, 287 S.W.3d 158, 172 (Tex.App.-Fort Worth 2009, pet. denied) ("The majority of courts have concluded that express incorporation of rules empowering the arbitrator to decide arbitrability (including ruling upon his or her own jurisdiction) clearly and unmistakably evidences the parties' intent to delegate issues of arbitrability to the arbitrator."); *Burlington Res. Oil & Gas Co. LP v. San Juan Basin Royalty Trust*, 249 S.W.3d 34, 41 (Tex.App.-Houston [1st Dist.] 2007, pet. denied) ("We are also mindful that, in certain circumstances, the incorporation of AAA rules may constitute clear and unmistakable evidence of an intent to allow an arbitrator to decide issues of arbitrability."); *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1368, 1373 (Fed.Cir.2006) (concluding arbitration agreement containing broad arbitration clause and incorporating American Arbitration Rules allowing arbitrator to rule on own jurisdiction "clearly and unmistakably shows the parties' intent to delegate the issue of determining arbitrability to an arbitrator"); *Contec Corp. v. Remote Solution Co. Ltd.*, 398 F.3d 205, 208 (2d Cir.2005).

Relying on *ODL Services*, DFD argues the trial court had the authority to make the initial determination of whether there was an agreement to arbitrate. In *ODL Services*, the parties entered into a master agreement that contained an arbitration clause. The agreement also provided that if ConocoPhillips needed technical and support services from ODL under the master agreement, it would send a request for services. ODL subsequently performed services for a subsidiary of ConocoPhillips without receiving a request for services. ODL was not paid for its services and initiated an arbitration against ConocoPhillips.

On appeal, ODL argued it was entitled to arbitrate its claim based on the master agreement and that, by incorporating the AAA International Arbitration Rules into the master agreement, the parties had agreed the arbitrator would decide all issues of substantive arbitrability, including whether an agreement to arbitrate existed. The Houston First Court of Appeals disagreed, noting the master agreement was triggered only by a request for services. *ODL Servs.*, 264 S.W.3d at 415. The trial court had the authority to decide the threshold issue of whether the master agreement had been triggered because if "no underlying request for ODL's services existed to trigger the contractually separate arbitration agreement, or that itself contained its own arbitration agreement, then there is no issue of substantive arbitrability to send to an arbitrator." *Id.*

Unlike ConocoPhillips in *ODL*, DFD does not dispute it entered into a written agreement to arbitrate with Saxa or that the agreement extends to partners, successors, assigns and legal representatives of Saxa. Further, this dispute does not involve a third-party attempting to join in the arbitration a claim that is unrelated to the contract between Saxa and DFD. Nor are we confronted with a non-signatory to the arbitration agreement contesting whether it is bound by a signatory's agree-

ment to arbitrate. Rather, Office Investors and the Condominium Association are attempting to assert a claim under the contract between Saxa and DFD as partners, successors, assigns and legal representatives of Saxa while DFD disputes that Office Investors and the Condominium Association are entities with which it agreed to arbitrate under the arbitration agreement. The scope of the arbitration agreement and the claims and parties it encompasses are questions of substantive arbitrability that DFD and Saxa agreed would be decided by the arbitration panel. *Contec*, 398 F.3d at 209, 211 (signatory to contract "containing an arbitration clause and incorporating by reference the AAA Rules" cannot disown obligation to arbitrate all disputes, including question of arbitrability of non-signatory's claims). Accordingly, the trial court erred by granting DFD's motion for summary judgment on the issue of whether Office Investors and the Condominium Association are proper parties to the arbitration.[5]

We sustain appellants' first issue. Because of our disposition of appellants' first issue, we need not consider appellants' remaining issues. TEX.R.APP. P. 47.1. We reverse the trial court's judgment and remand this case to the trial court for further proceedings.

---

**5.** Saxa argued in its response to DFD's motion for summary judgment that the trial court did not have the authority to rule on the motion because the parties had agreed the arbitration panel would determine issues of substantive arbitrability. However, Saxa did not move for summary judgment on the ground the trial court did not have authority to rule on the issue. Accordingly, we remand this case to the trial court rather than rendering the judgment the trial court should have rendered. *See Valence Operating Co.*, 164 S.W.3d at 661 ("When both parties move for partial summary judgment on the same issues and the trial court grants one motion and denies the other, as here, the reviewing court considers the summary judgment evidence presented by both sides, determines all questions presented, and if the reviewing court determines that the trial court erred, renders the judgment the trial court should have rendered.").