**Vacate Trial Court's Order and Remand and Opinion Filed July 23, 2014**



In The
# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-13-01250-CV

### MOMENTIS U.S. CORPORATION, Appellant
### V.
### SHELDON WEISFELD AND WESLEY BISHOP, Appellees

**On Appeal from the 68th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-12-13869**

## MEMORANDUM OPINION

Before Justices FitzGerald, Francis, and Myers
Opinion by Justice Francis

In this accelerated appeal, Momentis U.S. Corporation appeals the trial court's order denying its motion to compel arbitration. Momentis contends the trial court abused its discretion by denying its motion because Sheldon Weisfeld and Wesley Bishop entered into an agreement and, under the terms of the agreement, agreed to arbitrate all disputes. Momentis also argues the terms of the agreement dictate that all the defenses raised by appellees must be decided by the arbitrator. We agree with both arguments, vacate the trial court's order denying arbitration, and remand for further proceedings.

Momentis is a company that markets natural gas and electricity contracts, mobile phones, internet, digital television, and other home and business-related services. As part of its sales program, Momentis contracts with third-party independent contractors, called independent

representatives. The IRs are direct sellers of the products Momentis offers and may recruit other IRs to work for Momentis. An individual IR is paid based on his sales for Momentis as well as the sales of any IRs he recruits.

An existing IR recruits a new IR by sending the recruit a link to his "biz" website. The new recruit electronically completes and signs the IR application and agreement on the recruiting IR's biz website. After the recruit pays the application fee and submits the form, Momentis sends the recruit a "welcome email" which the company considers acceptance of the application. The online application provides that any dispute arising out of or relating to the agreement or Momentis's policies "shall be exclusively resolved by binding arbitration." The agreement also provides that an IR may rescind the agreement within three days of completing and submitting the form. A recruit may print a paper version of the terms of the agreement as well as a copy of Momentis's policies by clicking on links provided on the online application page.

Bishop and Weisfeld signed up to be IRs in May 2011 and July 2011, respectively. Each completed the online application, paid the agreement fee, and submitted the form to Momentis. Each received a welcome email as well as a representative ID and password, a log-in access to Momentis's M-Center, and an "M-Rep Starter Kit," containing marketing and training materials.

In September 2011, Momentis held a two-day international conference at the Gaylord Texan Resort in Grapevine to mark the launching of Momentis in Texas. Both Bishop and Weisfeld attended. At the end of the conference, president and CEO Andy McWilliams gave a closing speech in which he stressed the virtues of working for Momentis as well as the opportunities the company offered to its IRs. He then told the people gathered at the conference that, for every IR in attendance that day who returned the following year and had "at least gotten a customer in the last year and sponsored a representative," Momentis would "pay for your hotel room, your event will be free, and we will give you $500 to be here."

The following year, Momentis again held a two-day international conference at the Gaylord Texan Resort in Grapevine. The event cost $99 to attend, and a hotel room for both nights was $340. Considering McWilliams's offer from the previous year, Weisfeld and Bishop believed they could receive up to $939—$500 plus the event cost of $99 and the $340 cost of a room for two nights. Although Weisfeld asked how to take advantage of the offer or get reimbursement, he was later told his request "has respectfully been denied by management." He and Bishop then filed this class action lawsuit against Momentis, alleging violations of the Texas Deceptive Trade Practices Act, breach of oral contract, and promissory estoppel. Momentis filed a general denial and alleged Weisfeld's and Bishop's claims were subject to a binding and enforceable arbitration agreement. Several months later, Momentis filed a motion to compel arbitration. After the trial court denied the motion, Momentis filed this accelerated appeal.

On appeal, Momentis contends the trial court abused its discretion by denying its motion to compel arbitration. Momentis claims it proved appellees agreed to arbitrate all disputes and that all appellees' defenses must be decided by the arbitrator.

We apply an abuse of discretion standard when reviewing an interlocutory order denying a motion to compel arbitration. *Sidley Austin Brown & Wood, LLP v. J. A. Green Dev. Corp.*, 327 S.W.3d 859, 862–63 (Tex. App.—Dallas 2010, no pet.). When the only dispute is one of law, we review the trial court's legal determinations de novo. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding).

In general, a party seeking to compel arbitration under the Federal Arbitration Act must establish (1) the existence of a valid, enforceable arbitration agreement and (2) that the claims at issue fall within that agreement's scope. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding). Because of state and federal policies favoring arbitration, doubts about the scope of the arbitration agreement must be resolved in favor of arbitration. *Sidley*

*Austin Brown & Wood*, 327 S.W.3d at 863. The party seeking to avoid arbitration then bears the burden of proving its defenses against enforcing an otherwise valid arbitration provision. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 756 (Tex. 2001) (orig. proceeding).

In determining the validity of agreements to arbitrate that are subject to the FAA, we generally apply state contract law principles governing the formation of contracts. *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676 (Tex. 2006) (orig. proceeding). Thus, an employer attempting to enforce an arbitration agreement must show the agreement meets all requisite contract elements. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 228 (Tex. 2003). Parties enter into a binding contract when the following elements exist: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Thornton v. AT&T Adver., L.P.*, 390 S.W.3d 702, 705 (Tex. App.—Dallas 2012, no pet.).

In its motion to compel arbitration, Momentis stated Weisfeld and Bishop both signed up to be IRs by completing, signing, and submitting the IR agreement and paying the required fee. Momentis also asserted (1) the IR agreement provides that any dispute between Momentis and an IR will be resolved by binding arbitration and (2) Momentis's policies and procedures, which are also referenced in the IR agreement, specifically provide that arbitration will occur under the FAA.

In support of its motion, Momentis filed the affidavit of Thomas Grissom, the director of research and compliance, and the person in charge of all IR functions, including the sign-up process. Grissom detailed the manner in which individuals become IRs. A current IR contacts a potential recruit by email, sending the recruit a link to the current IR's biz website. To access the application and agreement, the recruit must select the "join" option on the recruiter's website,

identify the state in which he resides, and choose the "Independent Representative Enrollment Form." The recruit electronically completes and signs the application and agreement by clicking on the "Sign & Submit" option.

According to Grissom, the on-line form has ten steps that must be completed before the application is complete. Step 9 is labeled "Momentis Terms of Agreement, Policies & Procedures and Compensation Plan" and contain links to PDF versions of the Terms of Agreement and Polices & Procedures. To continue with the application process, a recruit must select the "I agree" option, which states "You must indicate that you have read and agreed to the Momentis Representative Terms of Agreement, Policies & Procedures and Compensation Plan in order to complete this application process. **By submitting this form you are electronically signing a legal agreement between you and Momentis.**" If the recruit does not agree, he cannot continue nor can he submit the application.

The Terms of Agreement provides, in pertinent part:

**1. Compliance.** I have carefully read and agree to comply with all terms and conditions and this Independent Representative Agreement (the "**Agreement**"), the Momentis Policies and the Momentis Compensation Plan, as well as all other terms of use, guidelines, policies and procedures published by Momentis U.S. Corp. ("**Momentis**") applicable to Momentis Independent Representatives, all of which are incorporated into this Agreement. This Agreement is not binding until received and accepted by Momentis at its home office in Dallas, Texas.

\*       \*       \*

**22. Arbitration.** Except as set forth herein, any dispute between Momentis or its affiliates and [the recruit], including but not limited to, those arising out of or relating to this Agreement or the Policies shall be exclusively resolved by binding arbitration as more fully set forth in the Policies. Arbitration shall occur in Dallas, Texas, under the commercial rules of the American Arbitration Association.

\*       \*       \*

**27. Entire Agreement.** This Agreement, the Compensation Plan and the Momentis Policies, and other terms and conditions of use which are incorporated herein by reference, constitute the entire agreement between the parties and supersede prior or existing oral or written agreements between the parties. No

–5–

other additional promises, representations, guarantees or agreements of any kind, whether oral or written, shall be valid unless expressly agreed to in writing and signed by an authorized officer of Momentis. In the event of any conflict between the terms of this Agreement and the Policies, the Policies will control.

Grissom stated the Policies also contain an arbitration agreement which provides that disputes will be arbitrated under the FAA. Specifically, it provides:

Independent Representatives agree that, except as set forth herein[,] any claim, dispute or other difference between Independent Representatives and Momentis or among Independent Representatives and Momentis will be exclusively resolved by binding arbitration pursuant to the Commercial Arbitration Rules of the American Arbitration Association (The "Rules") and the United States Arbitration Act, 9 U.S.C., Sections 1-16 (The "Act"), with arbitration to occur at Dallas, Texas. This paragraph will control over any conflict between this paragraph and The Act or The Rules. The parties agree that the arbitrator will have the primary power to decide any question about the arbitrability of any claim, dispute or other difference between them.

According to Grissom, both Bishop and Weisfeld signed up as IRs by completing, submitting, and electronically signing the IR agreement (Bishop on May 25, 2011 and Weisfeld on July 22, 2011). Each checked the "I agree" button at Step 9, paid the requisite fee, and clicked on the "Sign & Submit" button. After Bishop and Weisfeld submitted the forms, Momentis accepted each application as evidenced by the welcome email sent from Chris Domhoff, then CEO of Momentis, to Bishop and Weisfeld. Each one also received an "M-Rep Starter Kit" containing marketing and training materials, further evidence they agreed to the terms and conditions of the agreement.

Although appellees filed a response and a supplemental response to the motion to compel, arguing there is no signature on the arbitration agreement, and even if there is, the agreement is illusory, unconscionable, and void, they did not file any objections or produce any evidence to contradict Grissom's testimony. Grissom's testimony shows that every person who wishes to be a Momentis IR must agree to the Momentis Representative Terms of Agreement, the Policies & Procedures, and the Compensation Plan before completing the application. The

Terms of Agreement as well as the Policies & Procedures provide that disputes will be arbitrated. And Grissom's testimony establishes that Bishop and Weisfeld each agreed to the terms and conditions set forth in the IR agreement, including that "any dispute between Momentis or its affiliates and [the recruit], including but not limited to, those arising out of or relating to this Agreement or the Policies shall be exclusively resolved by binding arbitration as more fully set forth in the Policies," by clicking on the "I agree" selection and submitting their applications. We conclude the trial court abused its discretion by concluding the parties did not agree to arbitrate.

In reaching this conclusion, we reject appellees' argument that nothing establishes the parties agreed to conduct an electronic transaction. Section 322.005 of the business and commerce code provides, "Whether the parties agree to conduct a transaction by electronic means is determined from the context and surrounding circumstances, including the parties' conduct." TEX. BUS. & COM. CODE ANN. § 322.005 (West 2009). Here, the evidence shows Momentis allows prospective recruits to access an application on-line, complete the application after first agreeing to the Terms as well as the Policies & Procedures, and click on the "Sign & Submit" option. Bishop and Weisfeld each accessed the on-line application and, after agreeing to the terms, completed and submitted the same. When considered in context, appellees' actions—agreeing to terms and submitting on-line applications via the "Sign & Submit" button—is sufficient evidence they agreed to conduct the transaction by electronic means.

We also reject appellees' argument that the unsigned, undated paper copies of the Terms of Agreement and Policies & Procedures attached to Grissom's affidavit, render all the other evidence insufficient. Grissom stated Step 9 of the on-line application process contains a link to PDF files and that the paper copies he attached to his affidavit are copies of the Terms of Agreement and Policies that recruits can access via the PDF links. Grissom notes that the copy

differs from the on-line application but this does not negate or diffuse his testimony about the on-line process and application, including its contents. Because the evidence established Bishop and Weisfeld agreed to arbitrate any dispute, we sustain Momentis's first issue.

In its second issue, Momentis contends the trial court erred by denying its motion to compel arbitration because, under the arbitration agreement, all appellees' defenses must be decided by the arbitrator. Again, we agree.

Whether the parties have submitted a particular dispute to arbitration, i.e., the "question of arbitrability," is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise. *AT & T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986). When the parties agree to a broad arbitration clause and explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator. *Saxa Inc. v. DFD Architecture Inc.*, 312 S.W.3d 224, 230 (Tex. App.—Dallas 2010, pet. denied).

In this case, the Terms of Agreement state any dispute between Momentis and the IR, "including but not limited to, those arising out of or relating to this Agreement or the Policies shall be exclusively resolved by binding arbitration as more fully set forth in the Policies." And the Policies provide, "The parties agree that the arbitrator will have the primary power to decide any question about the arbitrability of any claim, dispute or other difference between them." Under the clear terms of the parties' agreement, whether the arbitration agreement is illusory, unconscionable, or against public policy is for the arbitrator to decide. We sustain Momentis's second issue.

We vacate the trial court's order denying arbitration and remand this case for further

proceedings consistent with our opinion.

131250F.P05

/Molly Francis/
MOLLY FRANCIS
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

MOMENTIS U.S. CORPORATION,
Appellant

No. 05-13-01250-CV        V.

SHELDON WEISFELD AND WESLEY
BISHOP, Appellees

On Appeal from the 68th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-12-13869.
Opinion delivered by Justice Francis,
Justices FitzGerald and Myers participating.

        In accordance with this Court's opinion of this date, we **VACATE**  the trial court's order denying arbitration and **REMAND** this case to the trial court for further proceedings consistent with the Court's opinion.
        We **ORDER** that appellant MOMENTIS U.S. CORPORATION recover its costs of this appeal from appellees SHELDON WEISFELD AND WESLEY BISHOP.


Judgment entered this 23nd day of July, 2014.


/Molly Francis/
MOLLY FRANCIS
JUSTICE

–10–