**Affirmed and Opinion Filed April 26, 2022**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-21-00103-CV

## WILLIAM HANN AND SUSANNE HANN, Appellants
## V.
## VINTAGE ESTATE HOMES, LLC AND VINTAGE ESTATE HOMES OF TEXAS LLC, Appellees

**On Appeal from the County Court at Law No. 2**
**Dallas County, Texas**
**Trial Court Cause No. CC-20-01731-B**

## MEMORANDUM OPINION

Before Justices Osborne, Pedersen, III, and Reichek
Opinion by Justice Pedersen, III

Appellants challenge the trial court's February 7, 2021 order vacating an April 1, 2020 arbitration award. Appellants contend the trial court erred in vacating the arbitration award because (ii) the combined question of arbitrability and jurisdiction was reserved for the empaneled arbitrator and (ii) appellees waived their complaint to the empaneled arbitrator. We affirm the order of the trial court.

## I.  BACKGROUND

**A. Parties' Agreements**

On April 26, 2016, appellants entered into a contract (Home Contract) with Vintage Estate Homes of Texas, LLC (VEH Texas)[1] for the construction of a house located at 5308 Diamante, Spicewood, TX, 78669 (Property). The Home Contract included the following arbitration provision:

> 19. DISPUTE RESOLUTION; MANDATORY BINDING ARBITRATION. *THE LIMITED WARRANTY AGREEMENT CONTAINS MANDATORY PROCEDURES FOR RESOLVING DISPUTES BETWEEN YOU AND US (INCLUDING MANDATORY BINDING ARBITRATION), AND THOSE PROCEDURES BECOME EFFECTIVE UPON CLOSING*. BY SIGNING THIS AGREEMENT, YOU AGREE TO ALL THE TERMS, CONDITIONS, RESTRICTIONS, DISCLAIMERS, WARRANTIES, RELEASES, PROCEDURES AND WAIVERS CONTAINED IN THE LIMITED WARRANTY AGREEMENT, INCLUDING THE OBLGATION TO SUBMIT ALL CLAIMS, DISPUTES AND CONTROVERSIES BETWEEN YOU AND US AND OUR AFFILIATES TO BINDING ARBITRATION RATHER THAN TO COURT. *ANY AND ALL CLAIMS, DISPUTES AND CONTROVERSIES BETWEEN YOU AND US OR OUR AFFILIATE, WHICH ARE NOT SUBMITTED TO, COVERED OR RESOLVED BY THE TERMS OF THE LIMITED WARRANTY AGREEMENT, SHALL BE SUBMITTED TO FINAL AND BINDING ARBITRATION IN DALLAS COUNTY, TEXAS*, AND NOT TO A COURT FOR DETERMINATION [ . . . ]. *ARBITRATION SHALL BE CONDUCTED BY THE AMERICAN ARBITRATION ASSOCIATION ("AAA") IN ACCORDANCE WITH ITS CONSTRUCTION INDUSTRY ARBITRATION AND MEDIATION RULES* THAT ARE IN EFFECT AT THE COMMENCEMENT OF THE ARBITRATION PROCEEDINGS. THIS AGREEMENT TO ARBITRATE IS GOVERNED BY THE FEDERAL ARBITRATION ACT (9 U.S.C. §1

---

[1] Pursuant to the original contract, the names "Vintage Estate Homes of Texas, LLC" and "Vintage Estate Homes, LLC" are used interchangeably.

1 ET SEQ.), AND THE ARBITRABILITY OF ANY ISSUE WILL BE DECIDED BY THE ARBITRATOR.

(emphasis in bold original; emphasis in italics added). On April 26, 2016, appellants also signed an amendment to the Home Contract, which provides:

> 2. The Home Contract provides that Vintage Estate Homes, LLC will provide a Limited Warrant [sic] to Buyers at Closing.
> 3. Vintage Estate Homes, LLC in lieu of providing a Limited Warranty shall provide a Limited Warranty ("Home Limited Warranty") by and through an independent third party home warranty provider which shall be issued to Buyers at Closing, at Vintage Estate Homes expense.
>
> Parties here to agree as follows:
> 1. Recitals. The above recitals are true and correct and are expressly incorporate [sic] herein.
> 2. Home Warranty. Vintage Estate Homes, LLC shall provide Buyers with a Home Limited Warranty (a copy of which is attached) at Closing paid by Vintage Estate Homes, LLC. This Home Limited Warranty replaces any other Limited Warranty Agreement to be provided to Buyers pursuant to the contract.
> 3. Limited Warranties: Disclaimer of Implied Warranties: The warranties contained in the Home Limited Warranty are the only warranties Your [sic] will receive from Us concerning the Home.

> VEH Texas constructed the house, and appellants closed on March 10, 2017.

VEH Texas provided a home buyer's warranty for the Property—the 2-10 Home Buyers Warranty (2-10 HBW). Vintage Estate Homes, LLC and appellants executed the 2-10 HBW as builder/seller and buyers, respectively. The 2-10 HBW included a "Buyer's Acknowledgment and Consent," which provides

> Buyer(s) agree that any and all claims or disputes between him (them) and the Builder/Seller (including any person you contend is responsible for a defect in your home) arising from or relating to the Warranty, shall be submitted to binding arbitration pursuant to the Federal Arbitration Act (9 U.S.C. §§1–16). By signing below, Buyer acknowledges reading

–3–

the 2-10 HBW Warranty Booklet, and **CONSENTS TO THE TERMS OF THAT DOCUMENT INCLUDING THE BINDING ARBITRATION PROVISION** contained therein. Buyer(s) accepts the 2-10 HBW warranty and in return, waives the Builder/Seller's implied warranty of habitability, merchantability or fitness to the extent allowed by law.

(emphasis in original). The 2-10 HBW included its own arbitration clause, which

provides:

> To expedite the resolution of any and all claims, disputes and controversies by or between the homeowner, the Builder/ Seller, 2-10 HBW, as administrator, the Warranty Insurer or any combination of the foregoing, arising from or related to this Warranty, the Warranty Insurance Policy, the 2-10 HBW Program, or to the Home, shall be settled by binding arbitration. Agreeing to arbitration means You are waiving Your right to a jury trial, class action or consolidation.
> . . . .
> The arbitration shall be conducted by DeMars & Associates, Ltd or by Construction Dispute Resolution Services, LLC or by any mutually agreeable arbitration service, pursuant to the service's applicable rules in effect at the time of the arbitration. The choice of the arbitration service shall be that of the Homeowner, or if the Homeowner is not involved, that of the party who initiates the arbitration. The arbitration shall be held in the home. No arbitration proceeding shall involve more than one single-family detached dwelling or more than one Multi-Family Building. The arbitrator shall render an award in accordance with the substantive law in the state in which the Home is located.
> . . . .
> The parties expressly agree that this warranty and this arbitration agreement involve and concern interstate commerce and are governed by the provisions of the Federal Arbitration Act (9 U.S.C. § 1, et seq.) now in effect and as the same may from time to time be amended, to the exclusion of any different or inconsistent state or local law, ordinance or judicial rule.
> This arbitration agreement is a self-executing arbitration agreement. Any disputes concerning the interpretation or the enforceability of this arbitration agreement, including without limitation, its revocability or voidability for any cause, the scope of arbitrable issues, and any defense

based upon waiver, estoppel or laches, shall be decided by the arbitrator.

**B. Disputes and Arbitration Proceedings**

On February 8, 2019, appellants demanded arbitration before the American Arbitration Association (AAA), specifically attaching the below request for arbitration from the 2-10 HBW.

Appellants' demand for arbitration included a list of "construction defects to be arbitrated," which itemized and enumerated several alleged defects under specific provisions of the 2-10 HBW.

On February 23, 2019, appellants submitted a letter to Home Buyers Warranty, which indicated the fee schedule for AAA and a builder fee for the arbitration before AAA of $1,875. On February 26, 2019, appellees emailed appellants' counsel (i) that appellees did "not agree to arbitration before the AAA" and (ii) that arbitration was to commence under the terms of the 2-10 HBW with Construction Dispute Resolution Services. Despite appellees' objection, appellants proceeded to arbitration before the AAA against appellees. The AAA empaneled arbitrator Jason Spencer, who conducted the arbitration between the parties on February 18 to February 20, 2020. Spencer signed a final award on April 1, 2020, which included—under the "Facts of the Case and Initial Findings" section—the following:

> The Demand for Arbitration was filed with the AAA on February 8, 2019. Although VEH was served and was corresponding with the AAA/Scott Hunter on March 20, 2019, VEH did not file their answer until August 9, 2019. *The Answer noted VEH "objects to the jurisdiction of this arbitration and specific demand is made that the Claimants provide written documentation of either of both Respondents being subject to arbitration and relief requested herein."* The Arbitrability Order was entered by the Arbitrator on October 11, 2019, which was supplemented on February 21, 2020.

(emphasis added). Spencer resolved the arbitration in favor of appellants—finding several different construction defects. *Inter alia,* Spencer awarded appellants damages for repair costs in the amount of $253,092.16; recovery for temporary housing during the repairs in the amount of $25,000.00; and appellants' reasonable and necessary attorney's fees in the amount of $58,853.80.

## C. Motion to Vacate the Arbitrator's Final Award

On April 3, 2020, appellees filed their petition to vacate arbitration final award before the trial court. Appellants answered, asserting that appellees did not object "to the Austin attorney Spencer as the arbitrator or conducting the arbitration in Travis county." Following a hearing on appellees' motion to vacate, the trial court entered an order vacating arbitrator Spencer's final award in favor of appellants.

> IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that *Plaintiffs' Motion to Vacate Arbitration Award* is GRANTED in its entirety.
> IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the *Final Award* entered in American Arbitration Association Case No. 01-19-0000-7687, attached hereto as Exhibit A, is VACATED in its entirety.

This appeal followed.[2]

## II.  ISSUES RAISED

Verbatim, appellants present three issues to our Court:

1. Was arbitrator Spencer's appointment a violation of the contract, and if so, was vacation of the award required?
2. Did the trial court err in deciding arbitrability?
3. Did the trial court err in vacating the arbitration award?

---

[2] It is undisputed that the arbitration agreements are both governed by the Federal Arbitration Act (FAA). *See* 9 U.S.C. §§1–16. The FAA provides that an appeal may be taken from an order vacating an arbitration award. 9 U.S.C. § 16(a)(1)(E). Texas Rule of Civil Procedure 51.016 provides:

> In a matter subject to the Federal Arbitration Act (9 U.S.C. Section 1 et seq.), a person may take an appeal or writ of error to the court of appeals from the judgment or interlocutory order of a district court, county court at law, or county court under the same circumstances that an appeal from a federal district court's order or decision would be permitted by 9 U.S.C. Section 16.

TEX. CIV. PRAC. & REM. CODE ANN. § 51.016.

Appellants' briefing and presentation in oral argument, however, assert that the trial court erred in vacating the arbitration award because (i) the combined question of arbitrability and jurisdiction was reserved for the arbitrator under the Home Contract and (ii) appellees' waived their complaint to the empaneled arbitrator. We take these as the two issues raised before our Court.

### III.   STANDARD OF REVIEW

"We review a trial court's decision to vacate or confirm an arbitration award de novo, based on the entire record." *Cambridge Legacy Group, Inc. v. Jain*, 407 S.W.3d 443, 447 (Tex. App.—Dallas 2013, pet. denied). "All reasonable presumptions are indulged in favor of the award, and none against it." *CVN Group, Inc. v. Delgado*, 95 S.W.3d 234, 238 (Tex. 2002) (quoting *City of San Antonio v. McKenzie Const. Co.*, 150 S.W.2d 989, 996 (1941)). "An arbitration award has the same effect as a judgment of a court of last resort, and a court reviewing the award may not substitute its judgment for that of the arbitrators merely because it would have reached a different decision." *Statewide Remodeling, Inc. v. Williams*, 244 S.W.3d 564, 568 (Tex. App.—Dallas 2008, no pet.).

### IV.   ANALYSIS

"'Under the FAA, the validity of an arbitration award is subject to attack only on grounds listed in sections 10 and 11 of the Act.'" *Roehrs v. FSI Holdings, Inc.*, 246 S.W.3d 796, 805–06 (Tex. App.—Dallas 2008, pet. denied) (quoting *Thomas James Assocs., Inc. v. Owens*, 1 S.W.3d 315, 319–20 (Tex. App.—Dallas 1999, no

pet.)) A court may vacate an arbitration award "where the arbitrators exceeded their powers." 9 U.S.C.A. § 10(a)(4). The Texas Supreme Court has explained:

> Arbitrators derive their power from the parties' agreement to submit to arbitration. *City of Pasadena v. Smith,* 292 S.W.3d 14, 20 (Tex. 2009). They have no independent source of jurisdiction apart from the parties' consent. *I.S. Joseph Co. v. Mich. Sugar Co.,* 803 F.2d 396, 399 (8th Cir.1986). Accordingly, arbitrators must be selected pursuant to the method specified in the parties' agreement. *Brook v. Peak Int'l, Ltd.,* 294 F.3d 668, 672–73 (5th Cir. 2002). An arbitration panel selected contrary to the contract-specified method lacks jurisdiction over the dispute. Accordingly, courts "do not hesitate to vacate an award when an arbitrator is not selected according to the contract-specified method." *Bulko v. Morgan Stanley DW, Inc.,* 450 F.3d 622, 625 (5th Cir. 2006). So we look to the arbitration agreement to determine what the parties specified concerning the arbitrator-selection process.

*Americo Life, Inc. v. Myer*, 440 S.W.3d 18, 21–22 (Tex. 2014).

**Issue One: Arbitrability and Jurisdiction**

Appellants first assert the trial court erred in vacating the arbitration award because the parties had a valid agreement requiring arbitration with the AAA under the Home Contract—which reserved the issue of arbitrability for the arbitrator. Appellants further assert that the questions of jurisdiction and arbitrability are the same for the purposes of the parties' agreements. Appellants rely on our opinion in *Ancor Holdings, LLC v. Peterson, Goldman & Villani, Inc.* to assert "we may not vacate an [arbitration] award even if it is based upon a mistake in law or fact." 294 S.W.3d 818, 826 (Tex. App.—Dallas 2009, no pet.). Appellants rely on our opinion in *Saxa Inc. v. DFD Architecture Inc.* to assert that the scope of the arbitration

agreement and the claims and parties it encompasses are questions of substantive arbitrability, reserved for the arbitrator to decide. 312 S.W.3d 224, 229–30 (Tex. App.—Dallas 2010, pet. denied). Appellants further refer to our opinions in *McGehee v. Bowman*, 339 S.W.3d 820 (Tex. App.—Dallas 2011, no pet.) and *Employee Solutions McKinney, LLC v. Wilkerson*, 2017 WL 1908626 (Tex. App.—Dallas May 10, 2017, no pet.) for the same contentions regarding arbitrability.

However, neither *Ancor*, *Saxa*, *McGehee*, nor *Wilkerson* apply to the dispute before us because none of those cases involved an issue challenging the arbitrator-selection process—challenging whether the arbitrator was "selected contrary to the contract-specified method." *Americo Life, Inc.*, 440 S.W.3d at 21 (explaining an arbitrator selected contrary to the contract-specified method lacks jurisdiction over the dispute). Accordingly, we disagree with appellants' contention that the questions of (i) jurisdiction—the question of who has the authority to decide a dispute[3]—and (ii) arbitrability—the question of whether a dispute or claim is subject to an arbitration agreement[4]—are the same in this circumstance. Although both parties refer to arbitrability, it is apparent from the briefing, record, and oral argument that

---

[3] "[Arbitrators] have no independent source of jurisdiction apart from the parties' consent." *Americo Life, Inc. v. Myer*, 440 S.W.3d 18, 21–22 (Tex. 2014) (citing *I.S. Joseph Co. v. Mich. Sugar Co.,* 803 F.2d 396, 399 (8th Cir.1986)).

[4] "The status, under applicable law, of a dispute's being or not being resolvable by arbitrators because of the subject matter." *Arbitrability*, BLACK'S LAW DICTIONARY (11th ed. 2019). "[T]he question of arbitrability is a gateway issue . . . . [that] include[s] whether the parties agreed to arbitrate and whether a claim or dispute is encompassed in the agreement to arbitrate. *Saxa Inc.*, 312 S.W.3d at 229) (internal citations omitted).

–10–

appellants' issue relates to the trial court's determination that arbitrator Spencer lacked *jurisdiction*. The trial court made no determination regarding arbitrability.[5]

Appellees argue the trial court did not err in vacating the arbitration award because the parties' agreements—both the Home Contract and the 2-10 HBW—required arbitration to proceed under the 2-10 HBW. Appellees assert empaneled AAA arbitrator Spencer had no authority to decide any issue in this dispute because he was selected contrary to the parties' agreements under the 2-10 HBW. We agree with appellees assertion that Spencer had no authority to decide the issues in this dispute.

Here, it is undisputed that the parties entered into two agreements: the Home Contract and the 2-10 HBW. It is further undisputed that the parties entered an amendment to the Home Contract, which anticipated a separate "home limited warranty." Though not explicitly incorporated by reference in the Home Contract or the amendment, it is evident from the record that the 2-10 HBW was the "home limited warranty" anticipated in the Home Contract and its according amendment.

By virtue of the Home Contract's arbitration agreement, the language "THE LIMITED WARRANTY AGREEMENT CONTAINS MANDATORY PROCEDURES FOR RESOLVING DISPUTES BETWEEN YOU AND US (INCLUDING MANDATORY BINDING ARBITRATION), AND THOSE

---

[5] Indeed, the record shows the trial court signed no findings or conclusions regarding the arbitrability of appellants' disputes or claims.

–11–

PROCEDURES BECOME EFFECTIVE UPON CLOSING" anticipated a separate "limited warranty agreement" and separate arbitration agreement—which would become effective upon closing. Furthermore, the Home Contract's arbitration agreement extends its limited application to "ANY AND ALL CLAIMS, DISPUTES AND CONTROVERSIES BETWEEN YOU AND US OR OUR AFFILIATE, *WHICH ARE NOT SUBMITTED TO, COVERED OR RESOLVED BY THE TERMS OF THE LIMITED WARRANTY AGREEMENT*." (emphasis added).

Thus, the parties contracted (i) for the 2-10 HBW's arbitration agreement to become effective upon closing and (ii) for the Home Contract's arbitration agreement to apply only when the controversy was ***not*** covered by the 2-10 HBW's arbitration agreement. The record shows appellants' disputes are based on the warranties within the 2-10 HBW. The 2-10 HBW—as the "limited warranty agreement" anticipated in the Home Contract and its amendment—includes a separate arbitration agreement. The pertinent language from the 2-10 HBW arbitration agreement encompasses appellants' disputes:

> To expedite the resolution of any and all claims, disputes and controversies by or between the homeowner, the Builder/Seller, 2-10 HBW, as administrator, the Warranty Insurer or any combination of the foregoing, arising from or related to this Warranty, the Warranty Insurance Policy, the 2-10 HBW Program, or to the Home, shall be settled by binding arbitration. Agreeing to arbitration means You are waiving Your right to a jury trial, class action or consolidation.

Under a section named "Selecting an Arbitration Service," the 2-10 HBW's arbitration agreement provided "arbitration shall be conducted by DeMars &

–12–

Associates, Ltd or by Construction Dispute Resolution Services, LLC or by any mutually agreeable arbitration service." Unlike the Home Contract, the 2-10 HBW's arbitration agreement included no express authority for the AAA to conduct arbitration.

Although the parties agreed the 2-10 HBW's arbitration agreement would control in post-closing disputes on the limited home warranty, appellants indicated "AAA Arbitration" on their 2-10 HBW's request for arbitration form to resolve their post-closing disputes. The record shows that appellees objected to the AAA's jurisdiction as arbitrator for this dispute; appellees did not mutually agree to AAA arbitration under the 2-10 HBW as an "agreeable arbitration service." Accordingly, empaneled AAA arbitrator Spencer was not "selected pursuant to the method specified in the parties' agreement." *Americo Life, Inc.*, 440 S.W.3d at 21. Since arbitration nevertheless proceeded to final award, arbitrator Spencer's final award was entered without jurisdiction. *See id.*

Therefore, we conclude the trial court did not err in vacating arbitrator Spencer's award, because the empaneled arbitrator lacked jurisdiction under the parties' agreements. *See id.* (citing *Bulko v. Morgan Stanley DW, Inc.,* 450 F.3d 622, 625 (5th Cir. 2006)). We overrule appellants' first issue. Furthermore, because we conclude the empaneled arbitrator lacked jurisdiction, we need not reach appellants' second issue regarding waiver. *See* TEX. R. APP. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every

–13–

issue raised and necessary to final disposition of the appeal."). To that end, we pretermit any further discussion of appellants' second issue.[6]

### V. CONCLUSION

Having overruled appellants' first issue, we affirm the order of the trial court.

210103f.p05

/Bill Pedersen, III//
BILL PEDERSEN, III
JUSTICE

---

[6] Indeed, discussion of appellants' second issue of waiver would risk providing an advisory opinion.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

WILLIAM HANN AND SUSANNE HANN, Appellants

No. 05-21-00103-CV    V.

VINTAGE ESTATE HOMES, LLC AND VINTAGE ESTATE HOMES OF TEXAS LLC, Appellees

On Appeal from the County Court at Law No. 2, Dallas County, Texas Trial Court Cause No. CC-20-01731-B.
Opinion delivered by Justice Pedersen, III. Justices Osborne and Reichek participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees VINTAGE ESTATE HOMES, LLC AND VINTAGE ESTATE HOMES OF TEXAS LLC recover their costs of this appeal from appellants WILLIAM HANN AND SUSANNE HANN.

Judgment entered this 26th day of April, 2022.