**DISSENT; and Opinion Filed August 5, 2022**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

No. 05-20-00380-CV
No. 05-20-00387-CV
No. 05-20-00388-CV
No. 05-20-00389-CV
No. 05-20-00390-CV

**PRESTONWOOD TRADITION, LP; TRADITION MANAGEMENT, LLC; PRESTONWOOD TSL, LP; PRESTONWOOD TSL GP, LLC; TRADITION SENIOR LIVING, L.P.; TRADITION SL, LLC; AND JONATHAN S. PERLMAN,**
**Appellants / Relators**
**V.**
**MARY JO JENNINGS, INDIVIDUALLY AND AS THE INDEPENDENT EXECUTRIX AND REPRESENTATIVE OF THE BENEFICIARIES OF THE ESTATE OF LEAH ALICE CORKEN; LISA CULLEN, INDIVIDUALLY; MATT CORKEN, INDIVIDUALLY; DIANNE TANNERY, INDIVIDUALLY AND AS THE INDEPENDENT EXECUTRIX AND REPRESENTATIVE OF THE BENEFICIARIES OF THE ESTATE OF JUANITA PURDY; THOMAS DUCKER, INDIVIDUALLY; SHERRIL KERR, INDIVIDUALLY AND AS THE INDEPENDENT EXECUTRIX AND REPRESENTATIVE OF THE BENEFICIARIES OF THE ESTATE OF GLENNA DAY; GREGORY B. DAY, INDIVIDUALLY; MARSHA SPRING REPP AND STEPHEN SPRING, INDIVIDUALLY AND AS THE CO-EXECUTORS AND REPRESENTATIVES OF THE BENEFICIARIES OF THE ESTATE OF SOLOMON H. SPRING; MICHAEL SOLOMON, MATTHEW ABRAMOWITZ, AND PAUL ABRAMOWITZ, INDIVIDUALLY AND AS THE CO-EXECUTORS AND REPRESENTATIVES OF THE BENEFICIARIES OF THE ESTATE OF JOYCE ABRAMOWITZ; AND MARC ABRAMOWITZ, INDIVIDUALLY,**
**Appellees / Real Parties in Interest**

## DISSENTING OPINION

Before the En Banc Court
Dissenting Opinion by Justice Partida-Kipness

In what feels like a bad case of déjà vu, I must again dissent in this matter. The opinion issued today by a seven-member majority of this Court erroneously determined that the trial court abused its discretion by deciding gateway issues of arbitrability. The majority's en banc opinion makes the same errors as were made in the original panel opinion. The opinion conflicts with binding precedent and impermissibly extends the ability of corporations to bind non-signatories to arbitration agreements without court review of threshold issues. The holding further disregards the AAA's own determination that the trial court should decide gateway issues of arbitrability in this case.

This decision deprives multiple mourning families of their right to have a trial court decide threshold questions of arbitrability. And by granting en banc reconsideration, this Court has continued to further delay each party from moving past the preliminary stage of litigation. The end result is not resolution or justice, but further delay and denial of the families' constitutional right to a trial by jury to obtain civil compensation for the death of their loved ones. Simply put, the en banc majority opinion is wrong, and I adamantly dissent.

**BACKGROUND**

In 2016, Leah Corken, Juanita Purdy, Glenna Day, Solomon Spring, and Joyce Abramowitz were residents of The Tradition-Prestonwood (The Tradition), a senior living community owned and operated by the Prestonwood Entities.[1] During a four-month span that year, those seniors died at The Tradition. In 2018, the Estate Representatives—representatives of the estates of Leah, Juanita, Glenna, Solomon, and Joyce—contacted the Prestonwood Entities regarding settlement of claims arising from the deaths. The parties began a mediation and, shortly thereafter, the Prestonwood Entities filed arbitration proceedings with the American Arbitration Association (AAA).

## I.    AAA Proceedings

The Prestonwood Entities pursued arbitration based on arbitration provisions contained in the decedents' leases[2] with The Tradition, which provided in pertinent part:

> **7.    YOUR RIGHTS AND RESPONSIBILITIES**
>
> . . . .
>
> **E.    Waiver of Jury Trial.**    Pursuant to the Arbitration Agreement set forth in Section 8 below, EACH PARTY

---

[1] I refer to Appellants / Relators collectively as the Prestonwood Entities.

[2] The record includes two, distinct leases signed by each of the decedents except for Leah Alice Corken. The "Former Leases" were executed when each decedent first moved to The Tradition. The "Operative Leases" were executed by each decedent after each decedent had resided at The Tradition for at least two years. We base our decision on the Operative Leases because they explicitly superseded the Former Leases and any differences between the leases are irrelevant to the issues presented here. The parties submitted only a 2015 lease signed by Corken, which includes the same arbitration provisions as those in the Operative Leases signed by the other decedents.

–3–

HERETO WAIVES ITS RIGHT TO A TRIAL BY JURY AND AGREES TO SUBMIT TO BINDING ARBITRATION in any action, proceeding or counterclaim brought by any party against any other party.

8. **ARBITRATION AGREEMENT**

A. **Agreement To Arbitrate.** Should a dispute arise between us, we desire to avoid costly and time-consuming litigation. ***Landlord and You agree that any claims, controversies, or disputes arising between us and in any way related to or arising out of the relationship created by this Agreement shall be resolved exclusively by binding arbitration.*** The arbitration shall be conducted in the county where the Community is located. Accordingly, neither Landlord nor You will be permitted to pursue court action regarding these claims, controversies or disputes.

B. **Conduct Of The Arbitration.** The arbitration shall be conducted by a panel of either one or three neutral arbitrators (the "**Panel**"), said number being chosen by You. The member(s) of the Panel shall be chosen by the American Arbitration Association ("**AAA**") or by mutual agreement between the parties. Where a medical issue may more likely than not come before the Panel, and the Panel is three in number, one member of the Panel shall be a physician. The Panel shall follow the current Commercial Arbitration Rules of the AAA. The Panel shall have the authority to set a timetable for the arbitration and to direct discovery in all controversies. The Panel shall obey the law. The Panel shall have the authority to grant equitable relief that could be ordered by a court. The Panel shall have authority to award economic and non-economic damages (including, damages for pain and suffering and mental anguish); but shall have no authority to award punitive or exemplary damages. The Panel's award may not exceed any award that could be granted by a court. The decision of the Panel shall be final, binding upon the Parties, not subject to appeal, and any court having jurisdiction may enter a judgment on the award.

. . . .

E. **Waiver Of Jury Trial.** Any claim, controversy, or dispute between the parties for which arbitration is not allowed

—4—

by law shall be brought in an appropriate court before a judge. ***Both You and Landlord waive your rights to a trial by jury.***

. . . .

**THIS AGREEMENT CONTAINS BOTH AN ARBITRATION PROVISION AND A WAIVER OF JURY TRIAL, WHICH MAY BE ENFORCED BY THE PARTIES.**

9. **MISCELLANEOUS**

. . . .

**G.** **Governing Law.** Except as noted above, this Agreement shall be governed by and construed under the laws of the State of Texas.

(Emphasis in original).

The Estate Representatives submitted to the AAA a consolidated answering statement, objections to the arbitrator's jurisdiction, and objections to the arbitrability of their personal injury claims. The Estate Representatives specifically objected that the TAA, not the FAA, applied to the arbitration provisions and that their claims were not arbitrable under the TAA. They also informed the AAA that they had filed declaratory judgment actions in state court seeking various declarations, including declarations that the TAA applies to the arbitration provisions, that their claims are not arbitrable, and various other declarations regarding the validity and enforceability of the arbitration provisions. The Estate Representatives asked the AAA to stay arbitration until a court had determined the proper jurisdiction and forum for their claims. Subject to their objections to the

arbitrator's jurisdiction, the Estate Representatives filed counterclaims for negligent undertaking, premises liability, general negligence, and negligent hiring.

After the Estate Representatives submitted their objections and answering statements to the AAA and filed their petitions in the instant cases, the AAA notified the parties that it had "made an administrative determination that it will not proceed with the administration of the submissions unless the parties mutually agree, or until the issue of arbitrability is decided by the Dallas County, Texas Court." The Prestonwood Entities asked the AAA to reconsider its ruling. The AAA rejected the Prestonwood Entities' request for reconsideration and affirmed that it would "not proceed until a determination by the courts [sic] is rendered as to arbitrability."

## II. Trial Court Proceedings

On the same day that they filed their answering statements, objections, and counterclaims with the AAA, the Estate Representatives filed their petitions in the underlying cases. In each case, the Estate Representatives brought a declaratory judgment action and asserted the same counterclaims filed with the AAA, which included claims of negligent undertaking, premises liability, general negligence, negligent hiring, training, and supervision, and gross negligence. The Estate Representatives sought wrongful death and survival damages and exemplary damages.

The Estate Representatives also filed motions to stay the arbitration in which they challenged the validity, enforceability, and scope of the "alleged arbitration

–6–

agreement"[3] as to their personal injury claims. In the motions to stay arbitration, the Estate Representatives asserted the following bases for staying the AAA proceedings:

1. The TAA, not the FAA, applies to the arbitration agreement because the leases provide they are governed by Texas law and do not involve interstate commerce;

2. The arbitration agreement is invalid and unenforceable under the TAA as to their personal injury claims because it does not meet the requirements of section 171.002(c) of the civil practice and remedies code. TEX. CIV. PRAC. & REM. CODE § 171.002(c) ("A claim described by Subsection (a)(3) is subject to this chapter if: (1) each party to the claim, on the advice of counsel, agrees in writing to arbitrate; and (2) the agreement is signed by each party and each party's attorney");

3. The arbitration agreement is illusory and, therefore, invalid and unenforceable, because the leases permit the Landlord[4] to unilaterally amend the arbitration agreement;

4. The punitive damages provision of the arbitration agreement is unconscionable;

5. If the arbitration agreement is deemed valid and enforceable, it is limited to claims against Tradition Management, LLC, the Landlord as defined in the leases; and

6. The arbitration agreement does not apply to the Estate Representatives declaratory judgment action.

---

[3] In their trial court pleadings, the Estate Representatives refer to the arbitration provisions found in the leases as the "alleged arbitration agreement." For ease of reference, we will refer to paragraphs 7.E, 8.A, 8.B, and 8.E as "the arbitration agreement." By doing so, however, we do not make any findings or conclusions concerning whether the Estate Representatives are parties to the leases or otherwise bound by those provisions because those questions are not presented in these proceedings.

[4] Tradition Management, LLC is defined as the Landlord in the leases.

Before the AAA resolved the Prestonwood Entities' request for reconsideration, the Prestonwood Entities filed pleas in abatement in the trial court seeking abatement of the cases "until the [AAA] determines whether or not to proceed with administration of the arbitration proceedings" and, if the AAA decided to proceed, abatement of the trial court proceedings to allow the arbitration to proceed. Alternatively, if the trial court determined that it "should hear the arbitrability issues," the Prestonwood Entities asked the trial court to "abate all other matters in this proceeding until such determination is made." In support of their pleas and in response to the Estate Representatives' motions, the Prestonwood Entities offered the affidavit of Richard Campos, controller of Tradition Management, LLC and Prestonwood Tradition, LLC, copies of the leases, copies of the various pleadings filed in the AAA proceeding, and copies of communications from the AAA concerning that proceeding. The Estate Representatives objected to and moved to strike portions of the Campos Affidavit.

In their pleas, the Prestonwood Entities asserted the following bases for abating the trial court proceedings and allowing the cases to proceed to arbitration:

1. The arbitration agreement is binding on the Estate Representatives asserting wrongful death and survival claims under Texas law and the plain terms of the leases;

2. The FAA, not the TAA, applies to the arbitration agreement;

3. The claims asserted by the Estate Representatives fall within the scope of the arbitration agreement; and

4. Alternatively, arbitration is permitted under the Texas common law.

The Prestonwood Entities supplemented their pleas in abatement after the AAA rejected the Prestonwood Entities' request for reconsideration. In the supplemental pleas, the Prestonwood Entities stated that the supplements were "not intended to replace" the original pleas "or to serve as a response" to the motions to stay arbitration. Rather, the Prestonwood Entities asserted additional arguments in support of their pleas that (1) the FAA and the TAA require that the AAA panel, not the trial court, decide whether the claims are arbitrable, and (2) the arbitration agreements are valid and enforceable under Texas common law, regardless of whether they would be enforceable under the TAA or the FAA. The Prestonwood Entities did, however, amend their original requests for relief and prayed for the following:

a. An order referring "all matters concerning whether and to what extent the claims are arbitrable" to an AAA arbitration panel duly appointed by the AAA, and abating all discovery and other proceedings in the trial court until the AAA determines the question of arbitrability. This relief was sought pursuant to 9 U.S.C. §§ 3, 4 and TEX. CIV. PRAC. & REM. CODE § 51.016, principals of comity, and Texas common law.

b. An order staying all proceedings in the trial court other than the question of arbitrability if the trial court decides to resolve that issue rather than referring it to the AAA.

c. If the trial court resolves the question of arbitrability, the Prestonwood Entities requested a determination that the TAA does not apply to this case because of the explicit exclusion in TEX. CIV. PRAC. & REM. CODE § 171.002(a)(3), and that the

claims at issue are arbitrable under either the FAA or Texas common law.

d.      If the trial court or the AAA determines that the claims are arbitrable under the FAA or the Texas common law, the Prestonwood Entities requested a stay of all trial court proceedings pending the rendition of a final award in the arbitration proceeding and an order compelling the parties to proceed with binding arbitration before the AAA under the CAR and the terms of the Operative Lease.

e.      Such other and further relief of any nature to which they may be justly entitled.

The trial court heard the pleas and motions and issued a global order in all cases. In the order, the trial court granted the Estate Representatives' motions to stay arbitration, denied the Prestonwood Entities' pleas in abatement, sustained the Estate Representatives' objections to the Campos Affidavit and struck the corresponding affidavit testimony, and stayed the AAA arbitration proceeding. The order did not include an explanation of the trial court's reasoning, and the trial court did not issue findings of fact or conclusions of law.

## PROCEDURAL HISTORY IN THIS COURT

On March 17, 2020, the Prestonwood Entities filed a separate notice of interlocutory appeal in each underlying trial court proceeding. On March 31, 2020, this Court designated the interlocutory appeals as companion cases and permitted the parties to file consolidated briefs in those proceedings. On June 18, 2020, the Prestonwood Entities filed a petition for writ of mandamus as to each underlying trial court proceeding in which they argue the claims are subject to arbitration

–10–

pursuant to Texas common law. On July 30, 2020, this Court consolidated each original proceeding into the corresponding interlocutory appeal and ordered the Estate Representatives to file a response to the petitions for writ of mandamus. The cases were submitted without oral argument on March 2, 2021.

Justice Pedersen, with Justice Goldstein participating and Justice Partida-Kipness dissenting, issued a panel opinion on October 22, 2021. *See Prestonwood Tradition, LP v. Jennings*, 636 S.W.3d 68 (Tex. App.—Dallas 2021, no pet.). On November 8, 2021, the Estate Representatives filed a motion for en banc reconsideration. The Court granted the Estate Representatives' motion for en banc reconsideration on December 14, 2021, heard oral argument en banc on January 19, 2022, and requested additional jurisdictional briefing from the parties on January 24, 2022. Upon issuance of the en banc majority opinion, the Court withdraws the October 22, 2021 panel opinion and vacates the judgment of that date.

**APPELLATE JURISDICTION**

"Unless a statute authorizes an interlocutory appeal, appellate courts generally only have jurisdiction over final judgments." *CMH Homes v. Perez*, 340 S.W.3d 444, 447 (Tex. 2011). Under the TAA, a trial court's order denying an application to compel arbitration made under section 171.021 or an order granting an application to stay arbitration made under section 171.023 may be challenged by interlocutory appeal. TEX. CIV. PRAC. & REM. CODE § 171.098(a)(1)–(2). Here, by granting the motions to stay and denying the pleas in abatement, the trial court concluded that the

–11–

TAA, not the FAA or Texas common law, applies to the arbitration agreement and determined that the arbitration agreement is invalid and unenforceable under the TAA. We, therefore, have jurisdiction to review the trial court's interlocutory order. *See, e.g., Citizens Nat'l Bank v. Bryce*, 271 S.W.3d 347, 353 (Tex. App.—Tyler 2008, no pet.) (when a trial court's denial of a motion to compel arbitration is based on the TAA, the order is subject to interlocutory appeal under TEX. CIV. PRAC. & REM. CODE § 171.098).[5]

## STANDARD OF REVIEW

Arbitration agreements can be enforced under either statutory provisions or the common law. *Royston, Rayzor, Vickery, & Williams, LLP*, 467 S.W.3d at 499. We review a trial court's ruling on a motion to stay arbitration for an abuse of discretion, reviewing questions of law de novo and factual determinations under a no-evidence standard of review. *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018); *Sidley Austin Brown & Wood, L.L.P. v. J.A. Green Dev. Corp.*, 327 S.W.3d 859, 863 (Tex. App.—Dallas 2010, no pet.); *Trafigura Pte. Ltd. v. CNA Metals Ltd.*, 526 S.W.3d 612, 615 (Tex. App.—Houston [14th Dist.] 2017, no pet.). Because the

---

[5] As discussed below, I would conclude the trial court was correct in determining that the TAA applies here. A determination that either the FAA or the Texas common law applied, however, would not deprive this Court of jurisdiction over these consolidated proceedings. For purposes of the Prestonwood Entities' arguments under the FAA, section 51.016 provides a court of appeals jurisdiction over an interlocutory appeal challenging an order refusing to stay trial court proceedings subject to arbitration or an order denying a motion to compel arbitration. TEX. CIV. PRAC. & REM. CODE § 51.016; 9 U.S.C. § 16(a)(1)(A)–(B); *W. Dairy Transp., LLC v. Vasquez*, 457 S.W.3d 458, 462–63 (Tex. App.—El Paso 2014, no pet.). Under common law standards, the trial court's ruling could be challenged by means of an original proceeding seeking mandamus relief. *Royston, Rayzor, Vickery, & Williams, LLP v. Lopez*, 467 S.W.3d 494, 499 (Tex. 2015).

trial court did not enter findings of fact or conclusions of law to explain its ruling on the parties' pleas and motions, we must uphold the trial court's decision on any appropriate legal theory urged below. *Bonded Builders Home Warranty Ass'n. of Tex. v. Rockoff*, 509 S.W.3d 523, 531–32 (Tex. App.—El Paso 2016, no pet.); *Lakeway Homes, Inc. v. White*, No. 05-15-01455-CV, 2016 WL 3453559, at *3 (Tex. App.—Dallas June 23, 2016, no pet.); *Ridge Nat. Res. LLC v. Double Eagle Royalty, L.P.*, 564 S.W.3d 105, 118 (Tex. App.—El Paso 2018, no pet).

As the parties seeking arbitration, the Prestonwood Entities were required to establish the existence of a valid arbitration agreement and claims falling within the scope of the agreement. *ALLCAPCORP, Ltd. Co. v. Sloan*, No. 05-20-00200-CV, 2020 WL 6054339, at *2–3 (Tex. App.—Dallas Oct. 14, 2020, no pet.) (mem. op.) (citing *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding)); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003) ("A party attempting to compel arbitration must first establish that the dispute in question falls within the scope of a valid arbitration agreement."). "If the other party resists arbitration, the trial court must determine whether a valid agreement to arbitrate exists." *J.M. Davidson*, 128 S.W.3d at 227. "If the trial court finds a valid agreement, the burden shifts to the party opposing arbitration to raise an affirmative defense to enforcing arbitration." *Id.* A court has no discretion and must compel arbitration if it is established that there is a valid arbitration agreement and the claims raised fall within the scope of that agreement. *ACE Cash Express, Inc. v. Cox*, No. 05-15-

–13–

01425-CV, 2016 WL 4205850, at *6 (Tex. App.—Dallas Aug. 9, 2016, no pet.) (mem. op.) (citing *Pilot Travel Ctrs., LLC v. McCray*, 416 S.W.3d 168, 177 (Tex. App.—Dallas 2013, no pet.)); *Seven Hills Commercial, LLC v. Mirabal Custom Homes, Inc.*, 442 S.W.3d 706, 714–16 (Tex. App.—Dallas 2014, pet. denied).

### ANALYSIS

In four appellate issues, the Prestonwood Entities contend the trial court erred in staying arbitration and denying their request to order the parties to arbitration. Specifically, they assert the trial court abused its discretion by (1) deciding whether the Estate Representatives' claims are arbitrable; (2) determining the TAA applied to the arbitration agreements; (3) disregarding the "uncontroverted evidence" establishing that the Estate Representatives' claims are arbitrable under the FAA; and (4) striking the affidavit offered in support of their pleas in abatement. In their petitions for writ of mandamus, the Prestonwood Entities argue in the alternative that the trial court abused its discretion in denying arbitration under the common law, and that they have no adequate remedy by appeal because they will be forced to defend five separate lawsuits instead of one arbitration proceeding.

### I. Determination of Arbitrability

In their first issue, the Prestonwood Entities assert that the trial court impermissibly determined questions of arbitrability by staying the AAA proceedings and denying their pleas in abatement rather than submitting those questions to the

–14–

AAA. The en banc majority agrees with the Prestonwood Entities on this point. I do not.

Arbitration is "simply a matter of contract between the parties; it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration." *Robinson v. Home Owners Mgmt. Enters., Inc.*, 590 S.W.3d 518, 525–26 (Tex. 2019) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)). Arbitration is governed by two fundamental principles: arbitration agreements are contracts that must be enforced according to their terms, and a party cannot be compelled to arbitrate any dispute absent an agreement to do so. *Id*.

Although arbitration is favored under both state and federal law, "arbitrators wield only the authority they are [contractually] given." *Lamps Plus, Inc. v. Varela*, – U.S. –, 139 S. Ct. 1407, 1416 (2019). Indeed, the federal policy favoring arbitration "is about treating arbitration contracts like all others, not about fostering arbitration." *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1713 (2022). To ensure parties are not forced to arbitrate matters outside their agreement, a substantive question of arbitrability—i.e., whether the parties have actually agreed to submit a particular dispute to arbitration—"is an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise." *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 83-84 (2002) (quoting *AT & T Techs. Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)); *Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d

–15–

624, 632 (Tex. 2018) (recognizing presumption favoring judicial determination of arbitrability).

The phrase "question of arbitrability" refers to the "narrow circumstance where contracting parties would likely have expected a court to have decided the gateway matter." *Howsam*, 537 U.S. at 83. Referring gateway matters to the court "avoids the risk of forcing parties to arbitrate a matter they may well not have agreed to arbitrate." *Id.* These "gateway matters" include whether the parties agreed to arbitrate and whether a claim or dispute is encompassed in the agreement to arbitrate. *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 520–21 (Tex. 2015) (questions of substantive arbitrability, which concern the existence, enforceability, and scope of an agreement to arbitrate, are usually decided by the trial court.); *McGehee v. Bowman*, 339 S.W.3d 820, 824 (Tex. App.—Dallas 2011, no pet.); *Saxa Inc. v. DFD Architecture, Inc.*, 312 S.W.3d 224, 229 (Tex. App.—Dallas 2010, pet. denied) (whether the parties agreed to arbitrate is generally an issue decided by the courts rather than an arbitrator).

The parties may, however, agree to submit arbitrability issues to arbitration. *Saxa*, 312 S.W.3d at 229 (citing *Howsam*, 537 U.S. at 83). But courts do not assume the parties "agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *Roe v. Ladymon*, 318 S.W.3d 502, 513 (Tex. App.—Dallas 2010, no pet.) (quoting *First Options*, 514 U.S. at 944); *McGehee*, 339 S.W.3d at 825–26 (if the parties clearly and unmistakably provide

–16–

that the arbitrator is to decide the questions of substantive arbitrability, then the trial court must permit the arbitrator to decide those issues). A "court must examine the arbitration agreement to decide if, when construed under the relevant state law, the agreement evidences a clear and unmistakable intention that the arbitrators will have the authority to determine the scope of arbitration." *Saxa*, 312 S.W.3d at 229 (citing *ODL Servs. Inc. v. ConocoPhillips Co.*, 264 S.W.3d 399, 413 (Tex. App.—Houston [1st Dist.] 2008, no pet.)). For example, the parties' agreement to a broad arbitration clause that expressly incorporates rules empowering the arbitrator to decide substantive arbitrability may provide clear and unmistakable evidence of the parties' intent to delegate the issues of substantive arbitrability to the arbitrator. *See Saxa*, 312 S.W.3d at 230; *see also Swearingen v. Swearingen*, No. 05-15-01199-CV, 2016 WL 3902747, at *3–4 (Tex. App.—Dallas July 14, 2016, no pet.) (mem. op.); *Schlumberger Tech. Corp. v. Baker Hughes Inc.*, 355 S.W.3d 791, 802–03 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

Here, Paragraph 8.B of the Operative Leases provides that "The Panel shall follow the current Commercial Arbitration Rules of the AAA." Rule R–7(a) of the AAA's Commercial Arbitration Rules (the Commercial Rules) gives an arbitrator "the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the Arbitration Agreement." The Prestonwood Entities argue that by invoking the AAA and its Commercial Rules in

the arbitration agreements, the parties clearly and unmistakably agreed to submit arbitrability issues to the arbitrator.

I agree that under ordinary circumstances, incorporation of the Commercial Rules in an arbitration agreement signifies that the agreement calls for the arbitrator to determine arbitrability. *See*, *e.g.*, *Holifield v. Barclay Props., Ltd.*, No. 05-21-00239-CV, 2021 WL 4549498, at *3 (Tex. App.—Dallas Oct. 5, 2021, pet. filed) (mem. op.) (stating general rule that "a bilateral agreement to arbitrate under the AAA rules constitutes clear and unmistakable evidence of the parties' intent to delegate the issue of arbitrability to the arbitrator.").[6] This general rule and the cases following it are not dispositive here, however, because they are distinguishable in at least two ways. First, none of these cases involved a situation such as here where the AAA deferred the arbitrability determination to the state court. Second, these cases did not involve parties disputing arbitration who were non-signatories to the agreement.

---

[6] Each of the following cases cites the general rule that express incorporation of rules empowering the arbitrator to decide arbitrability constitutes clear and unmistakable evidence of the parties' intent to delegate issues of arbitrability to the arbitrator. *See also HomeAdvisor, Inc. v. Waddell*, No. 05-19-00669-CV, 2020 WL 2988565, at *5 (Tex. App.—Dallas June 4, 2020, no pet.) (mem. op.); *Trafigura Pte. Ltd. v. CNA Metals Ltd.*, 526 S.W.3d 612, 616–18 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *Gilbert v. Rain & Hail Ins.*, No. 02-16-00277-CV, 2017 WL 710702, at *4 (Tex. App.—Fort Worth Feb. 23, 2017, pet. denied) (mem. op.); *Schlumberger Tech. Corp. v. Baker Hughes Inc.*, 355 S.W.3d 791, 803 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *Saxa Inc. v. DFD Architecture Inc.*, 312 S.W.3d 224, 229–31 (Tex. App.—Dallas 2010, pet. denied) *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012); *Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 262-63 (5th Cir. 2014).

## A. AAA's refusal to determine arbitrability

This case is unique because the AAA refused to determine the question of arbitrability. While the parties were attempting to informally resolve their disputes, the Prestonwood Entities filed arbitration actions with the AAA under its Commercial Rules as provided in the leases. During this process, the Estate Representatives requested that the AAA stay all proceedings pending a determination of proper jurisdiction for all claims and counterclaims in this dispute by a court of competent jurisdiction. Over the Prestonwood Entities' objections, the AAA granted the Estate Representatives' request and stayed the proceedings. The Prestonwood Entities challenged that administrative stay under the AAA's administrative processes but were unsuccessful in having the stay lifted.

In fact, the record before us indicates that the AAA declined three times to proceed with administration, writing each time that in order to proceed, it required either mutual agreement by the parties or adjudication of arbitrability by a Dallas County Texas Court. First, on June 28, 2019, the AAA through Rod Toben wrote:

> The AAA is in receipt of the parties' communications submitted in response to the AAA's June 19, 2019 request for clarification regarding separate submissions for dispute resolution regarding prospective Claimants . . . and prospective Respondents . . . .

> Upon review of the parties' contentions, the AAA has made an administrative determination that it will not proceed with the administration of the submissions unless the parties mutually agree, or until the issue of arbitrability is decided by the Dallas County, Texas Court ("Court").

Then, on August 8, 2019, the AAA re-asserted its position:

The AAA is in receipt of the parties' communications submitted in response to the attached email dated June 28, 2019. After review of the filings, the AAA has determined the administration of these matters will not proceed until determination by the courts is rendered as to arbitrability.

Finally, on August 28, 2019, the AAA again chose not to change its decision:

The AAA has reviewed the latest filing from Mr. Macdonald dated August 14, 2019 (sic) and August 15, 2019, as well as, the email response from Mr. Crawford dated August 19, 2019. The determination of the AAA, as communicated to counsel on June 28, 2019 (sic) and August 8, 2019, remains as stated.

Despite the AAA's unwavering decision, the Prestonwood Entities assert that the AAA did not make a substantive decision that the AAA does not have jurisdiction or that the claims are not arbitrable because Rule R–7 of the Commercial Rules "expressly provides that such issues can be only decided by a properly constituted Panel." A plain reading of Rule 7 and other applicable rules renders this argument unavailing.

Rule R–7, titled "Jurisdiction," provides:

(a) The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.

(b) The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

(c) A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the

answering statement to the claim or counterclaim that gives rise to the objection. The arbitrator may rule on such objections as a preliminary matter or as part of the final award.

Am. Arbitration Ass'n, Commercial Arbitration Rules & Mediation Procedures, *R– 7: Jurisdiction* (eff. Oct. 1, 2013), *available at* adr.org/commercial.

Rule R–7 provides the arbitrator with the power to determine his or her own jurisdiction. *Id.*; *see also Super Starr Int'l, LLC v. Fresh Tex Produce, LLC*, No. 13-17-00184-CV, 2017 WL 4054395, at *4 (Tex. App.—Corpus Christi–Edinburg Sept. 14, 2017, no pet.) (mem. op.). The rule further gives the arbitrator the power to consider and determine any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim. Rule R–7 does not, however, provide that issues of jurisdiction or arbitrability can be decided "only" by a properly constituted panel. On the contrary, the only exclusive grant of authority regarding administration under the commercial rules is given to the AAA under Rule R–1(A) and Rule R–2. Rule R–1(A) provides in part that "Any disputes regarding which AAA rules shall apply shall be decided by the AAA." Am. Arbitration Ass'n, Commercial Arbitration Rules & Mediation Procedures, *R– 1: Agreement of Parties* (eff. Oct. 1, 2013), *available at* adr.org/commercial. Similarly, Rule R–2 provides that "Arbitrations administered under these rules shall only be administered by the AAA or by an individual or organization authorized by the AAA to do so." *Id.* at *R-2: AAA and Delegation of Duties*. Under these rules, I would conclude the AAA has the sole authority to

determine which of its rules apply to a given dispute and who shall administer a particular proceeding.

Here, under the authority granted in Commercial Rules R–1 and R–2, the AAA declined to administer the cases until either the parties agreed to proceed in the AAA, or a court of competent jurisdiction ruled on the issue of arbitrability. The AAA, in other words, authorized the state court to make preliminary decisions of arbitrability. Nothing in the plain language of Rule R–7 prohibits the AAA from doing this, and Rules R–1 and R–2 authorize it. The AAA made a choice not to decide arbitrability. But it was still a choice, and we should respect it. *E.g.,* Jean–Paul Sartre, *Existentialism Is a Humanism* 44 (Carol Macomber trans., Yale University Press 2007) ("[W]hat is impossible is not to choose. I can always choose, but I must also realize that, if I decide not to choose, that still constitutes a choice."); *cf. Hubbard v. Hollywood Park Realty Enters., Inc.*, 1991 WL 3151, at *10 (Del. Ch. Jan. 14, 1991) ("From a semantic and even legal viewpoint, 'inaction' and 'action' may be substantive equivalents, different only in form.").

By asking us to compel the AAA to assign an arbitration panel to determine arbitrability despite the AAA's decision that, unless and until certain conditions are met, none of its rules will apply in this case, the Prestonwood Entities impliedly request that we divest the AAA of its authority to interpret its own rules and determine its own jurisdiction. This we cannot do. Indeed, the guiding principles of law provided in *Schein*, *Saxa*, *Home Advisor*, and *Phillips* require us to decline the

–22–

Prestonwood Entities' request. By concluding otherwise, the en banc majority violates the well-established principle that a court cannot imply contract terms to favor arbitration. *See, e.g., Morgan*, 142 S.Ct. at 1713–14.

Accordingly, I would conclude that, in the face of the AAA declining to proceed until certain conditions are met and deferring to Dallas County courts to determine the issue of arbitrability, the trial court properly moved to decide the question of arbitrability.

### B. The Estate Representatives are non-signatories who did not agree to arbitration.

The Prestonwood Entities also maintain that Paragraph 8.B constitutes clear and unmistakable evidence that the Estate Representatives agreed to submit questions of arbitrability to the arbitrator and, therefore, this Court should require the trial court to abate its proceedings and send the case back to the AAA. The en banc majority agrees with them. As discussed above, however, I conclude this argument fails because such a holding requires this Court to disregard the AAA's unequivocal refusal to determine arbitrability. The conclusion is also faulty because it overlooks that the Estate Representatives are non-signatories to the Operative Leases. As such, the inclusion of Paragraph 8.B is not evidence that the Estate Representatives agreed to arbitrate or to do so under AAA rules, much less clear and unmistakable evidence that the Estate Representatives, as non-contracting parties, authorized an arbitrator to decide those gateway matters. *See Roe v. Ladymon*, 318 S.W.3d 502 (Tex. App.—Dallas 2010, no pet.).

In *Roe*, Metro LLP and Roe were the parties to a construction contract with an arbitration provision. 318 S.W.3d at 507. Ladymon signed the contract as Metro's partner but did not sign in his individual capacity. *Id.* The arbitration agreement incorporated the AAA's Construction Industry Arbitration Rules, which included Rule R–8, a provision similar to Rule 7 of the Commercial Arbitration Rules. *Id.* at 507, 517. Roe was dissatisfied with Metro's construction services and demanded arbitration against both Metro and Ladymon. *Id.* at 508. Ladymon objected to arbitration, asserting the arbitration provision did not apply to him because he did not sign an agreement to arbitrate in his individual capacity. *Id.* Roe argued that Rule R–8 required that the question of whether Ladymon was subject to the arbitration provision be submitted to the arbitrator. *Id.* at 517.

This Court disagreed, noting that "the entities who agreed to arbitrate under the AAA rules are Metro LLP and Roe, not Ladymon" and, as such, "the terms of the contracting parties' agreement to arbitrate is not evidence that a non-contracting party—here Ladymon—agreed to arbitrate or to do so under AAA rules, much less clear and unmistakable evidence of such an agreement." *Roe*, 318 S.W.3d at 517 (citing *First Options*, 514 U.S. at 946–47). We concluded that we could not "say that Ladymon clearly and unmistakably agreed to submit gateway issues to an arbitrator simply because Roe and Metro LLP agreed to arbitrate in accordance with rules selected by the AAA." *Id.*

I would apply the same analysis here. Just as in *Roe*, the parties seeking to avoid arbitration—the Estate Representatives—are non-contracting parties because they did not sign the leases. *See Roe*, 318 S.W.3d at 517. As such, the language in the leases stating that the arbitration panel "shall follow the current Commercial Arbitration Rules of the AAA" is not evidence that the Estate Representatives agreed to arbitrate or to do so under AAA rules, much less clear and unmistakable evidence that the Estate Representatives, as non-contracting parties, authorized an arbitrator to decide those gateway matters. *See, e.g., Elgohary v. Herrera*, 405 S.W.3d 785, 791–92 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (applying *Roe* and concluding that agreement to arbitrate under AAA rules was not clear and unmistakable evidence that a non-contracting party agreed to arbitrate under AAA rules).

Whether the arbitration agreement binds the Estate Representatives as non-signatories is for the courts to decide, unless there is "clear and [un]mistakable evidence" that the Estate Representatives agreed the arbitrator would make that decision. *See Roe*, 318 S.W.3d at 518 (first citing *Howsam*, 537 U.S. at 84, and then citing *First Options*, 514 U.S. at 944). On this record, the Prestonwood Entities have not shown that the Estate Representatives "clearly agreed to have the arbitrator [ ] decide (i.e., to arbitrate) the question of arbitrability." *See First Options*, 514 U.S. at 946. Because the non-contracting parties (here the Estate Representatives) "did not clearly agree to submit the question of arbitrability to arbitration, the [trial court]

–25–

was correct in finding that the arbitrability of the dispute was subject to independent review by the courts." *See id.* at 947. Accordingly, the trial court correctly concluded the arbitrability of the dispute was subject to its de novo determination. *See Roe*, 318 S.W.3d at 518; *see also Jody James Farms*, 547 S.W.3d at 633 ("Given the absence of clear and unmistakable evidence that Jody James agreed to arbitrate arbitrability in disputes with non-signatories, compelled arbitration cannot precede a judicial determination that an agreement to arbitrate exists. The trial court was therefore charged with determining whether a valid agreement to arbitrate exists between Jody James and the Agency before any issue may be referred to arbitration.").

The facts of this case are unique because of the Estate Representatives' status as non-signatories and the AAA's decision to defer the arbitrability determination to the state court. And under these facts, the mere incorporation of the Commercial Rules into the Agreement should not be considered clear and unmistakable evidence of an agreement to arbitrate arbitrability for disputes between the Prestonwood Entities and non-signatory, third parties. *See, e.g., Jody James Farms*, 547 S.W.3d at 631–33; *see also Roe*, 318 S.W.3d at 518. The majority dismisses my analysis as no more than "an interesting and creative argument" and exaggerates the potential impact on future cases. The majority's conclusion, however, directly conflicts with Texas law. *See Jody James Farms*, 547 S.W.3d at 631–33. In *Jody James Farms*, the Texas Supreme Court held "an arbitration agreement's mere incorporation of the AAA rules" does not show "clear intent to arbitrate arbitrability" when the dispute

is "between a party to the arbitration agreement and a non-signatory." *Id.* at 632. Whereas the majority views the Estate Representatives' non-signatory status as irrelevant, in *Jody James Farms* the supreme court stated that non-signatory status "is an important distinction" in this analysis:

> The involvement of a non-signatory is an important distinction because a party cannot be forced to arbitrate absent a binding agreement to do so. The question is not whether Jody James agreed to arbitrate with someone, but whether a binding arbitration agreement exists between Jody James and the Agency. What might seem like a chicken-and-egg problem is resolved by application of the presumption favoring a judicial determination. A contract that is silent on a matter cannot speak to that matter with unmistakable clarity, so an agreement silent about arbitrating claims against non-signatories does not unmistakably mandate arbitration of arbitrability in such cases.

*Id.* By dismissing these distinguishing factors as irrelevant, the en banc majority opinion conflicts with binding authority and disregards the presumption favoring judicial determination. Moreover, the opinion deprives non-signatories of the opportunity to have a court determine threshold questions of arbitrability and impermissibly subjects non-signatories to the presumptions generally applied to signatories despite the non-signatories' unique status under Texas law. For the foregoing reasons, I would overrule the Prestonwood Entities' first issue.

## II. Applicability of the TAA rather than the FAA

Having concluded the trial court did not abuse its discretion by determining gateway issues of arbitrability, I would move on to consider the Prestonwood Entities' remaining issues in which they argue the FAA, rather than the TAA, applies to the arbitration agreement and requires the trial court to compel arbitration.

In the trial court and on appeal, the Estate Representatives maintain the arbitration agreement is governed by the TAA, rather than the FAA. As a result, the Estate Representatives contend the arbitration provision is not enforceable as to their personal injury claims because they did not agree in writing to arbitrate and neither they nor any party's attorney signed the agreement. *See* TEX. CIV. PRAC. & REM. CODE § 171.002(a)(3), (c) (the TAA does not apply to a claim for personal injury unless: "(1) each party to the claim, on the advice of counsel, agrees in writing to arbitrate; and (2) the agreement is signed by each party and each party's attorney"). The Prestonwood Entities, in contrast, urge that the FAA controls because the transaction involves interstate commerce and TAA's exclusion of personal injury claims interferes with the enforceability of the arbitration agreement, thus precluding application of the TAA and requiring application of the FAA. We disagree with this notion, and we agree with the Estate Representatives.

To compel arbitration, a party must prove that a valid arbitration agreement exists. *Henry*, 551 S.W.3d at 115. Whether an agreement is valid and enforceable necessarily requires the court to determine what law governs the agreement. The FAA "preempts state statutes to the extent they are inconsistent with that Act." *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 779–80 (Tex. 2006) (orig. proceeding); *see Royce Homes, L.P. v. Bates*, 315 S.W.3d 77, 85 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (FAA preempts all otherwise applicable inconsistent state laws, including any inconsistent provisions of the TAA, under the Supremacy Clause of

the United States Constitution). The FAA, however, is not triggered in every case. "The FAA only preempts the TAA if: '(1) the agreement is in writing, (2) it involves interstate commerce, (3) it can withstand scrutiny under traditional contract defenses [under state law], and (4) state law affects the enforceability of the agreement.'" *In re D. Wilson Const. Co.*, 196 S.W.3d at 780 (quoting *In re Nexion Health at Humble, Inc.*, 173 S.W.3d 67, 69 (Tex. 2005) (orig. proceeding) (per curiam) (construing 9 U.S.C. § 2)). Here, if the FAA is triggered it preempts the TAA because the two statutes are inconsistent. *See In re Nexion Health at Humble*, 173 S.W.3d at 69 ("The TAA interferes with the enforceability of the arbitration agreement by adding an additional requirement—the signature of a party's counsel—to arbitration agreements in personal injury cases.") (citing TEX. CIV. PRAC. & REM. CODE § 171.002(a)(3), (c)). With these rules in mind, we must first determine if the agreement specifies what law applies.

The arbitration agreements in question reference neither the FAA nor the TAA. They merely note that the leases "shall be governed by and construed under the laws of the State of Texas" and the arbitration "shall be conducted in the county where the [The Tradition] is located." In such cases, a choice-of-law clause will not be construed to select the TAA to the exclusion of the FAA unless the clause "specifically exclude[s] the application of federal law." *In re L & L Kempwood Assocs., L.P.*, 9 S.W.3d 125, 127–28 (Tex. 1999) (orig. proceeding) (per curiam). Although a general choice-of-law clause such as the one in the Leases does not

specifically exclude the application of federal law, application of the FAA is not automatic. *See Roehrs v. FSI Holdings, Inc.*, 246 S.W.3d 796, 803 (Tex. App.—Dallas 2008, pet. denied) (similar choice-of-law clause did not specifically exclude application of FAA) (citing *Dewey v. Wegner*, 138 S.W.3d 591, 596 & n. 5 (Tex. App.—Houston [14th Dist.] 2004, no pet.)). Rather, the FAA must be triggered to apply and, even then, the TAA will also apply to the extent it is consistent with the FAA. *See Fredericksburg Care Co., L.P. v. Perez*, 461 S.W.3d 513, 517 (Tex. 2015) ("The FAA applies to arbitration clauses in contracts that affect interstate commerce."); *see also In re D. Wilson Constr. Co.*, 196 S.W.3d at 779–80 (the FAA "preempts state statutes to the extent they are inconsistent with that Act."); *see also Royce Homes, L.P.*, 315 S.W.3d at 85 (applying FAA where contract involved interstate commerce and recognizing TAA also applies to the extent it is consistent with the FAA). As discussed below, however, I would conclude the FAA is not triggered under the facts of this case because the agreement does not involve interstate commerce and, therefore, the FAA does not apply.

For the FAA to preempt the TAA, the agreement must involve interstate commerce and "state law must refuse to enforce [the] arbitration agreement that the FAA would enforce, either because (1) the TAA has expressly exempted the agreement from coverage, or (2) the TAA has imposed an enforceability requirement not found in the FAA." *In re D. Wilson Constr. Co.*, 196 S.W.3d at 780 (citations omitted); *see Nafta Traders, Inc. v. Quinn*, 339 S.W.3d 84, 97–98 (Tex. 2011);

*Fredericksburg Care Co.*, 461 S.W.3d at 517; *Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 269–70 (Tex. 1992) (stating that the FAA "applies to all suits in state and federal court when the dispute concerns a contract evidencing a transaction involving commerce") (citing *Perry v. Thomas*, 482 U.S. 483, 489 (1987)). The parties disagree on whether the agreements involve interstate commerce, and that issue is dispositive here.

The term "commerce" has been broadly defined and includes contracts relating to interstate commerce. *In re Gardner Zemke Co.*, 978 S.W.2d 624, 626 (Tex. App.—El Paso 1998, orig. proceeding). Under the FAA there is no requirement that the effect on interstate commerce be substantial; however, it requires that commerce be involved or affected in the transaction that is the subject of the arbitration agreement. *In re L & L Kempwood Assocs.*, 9 S.W.3d at 127; *In re Merrill Lynch Trust Co. FSB*, 123 S.W.3d 549, 553 (Tex. App.—San Antonio 2003, orig. proceeding).

"Interstate commerce" in this context is not limited to the actual shipment of goods across state lines but includes all contracts "relating to" interstate commerce. *In re First Merit Bank*, 52 S.W.3d 749, 754 (Tex. 2001) (orig. proceeding). Interstate commerce may be shown in a variety of ways, including: (1) location of headquarters in another state; (2) transportation of materials across state lines; (3) manufacture of parts in a different state; (4) billings prepared out of state; and (5) interstate mail and phone calls in support of a contract. *Lopez v. Casa Pontiac GMC Buick, Inc.*, No.

14-11-00001-CV, 2011 WL 5926683, at *3 (Tex. App.—Houston [14th Dist.] Nov. 29, 2011, no pet.) (mem. op.) (citing *Jack B. Anglin*, 842 S.W.2d at 270).

In support of their contention that the FAA controls, the Prestonwood Entities produced the Campos affidavit. In his affidavit, Campos cited numerous alleged facts to demonstrate that the general operation of The Tradition community involves interstate commerce. Specifically, Campos alleged:

- The Tradition paid "almost $3 million . . . to out-of-state vendors of goods and services" from 2014 to 2018;

- Many vendors are "located from coast to coast and border to border," and many in-state vendors sell goods "manufactured, grown, assembled or prepared outside the State of Texas";

- The Prestonwood Entities use "telephone, mail, email and overnight delivery service" to contact "out-of-state vendors, potential residents and contact persons for . . . residents";

- The Tradition advertises employment and residency openings on its website and online "job board[s]";

- The Prestonwood Entities use interstate direct mail advertising and online advertising purchased through "third-party vendors";

- Some of The Tradition's residents relocated to the community from out of state, and some of the residents' "designated family members" are located in other states; and

- Some of the items The Tradition uses in meal preparation "can only be obtained through interstate or foreign commerce."

The Estate Representatives objected to and moved to strike these portions of the Campos affidavit on multiple grounds. The trial court sustained the Estate Representatives' objections and struck the corresponding affidavit testimony. The remaining evidence in the record does not address the Prestonwood Entities'

–32–

purported interstate commerce activities at all, much less activities purportedly conducted to fulfill the leases. Before addressing the applicability of the FAA, we must, therefore, determine whether the trial court abused its discretion by sustaining the objections to Campos's affidavit testimony.

The Prestonwood Entities contend the trial court erred by striking the Campos testimony because the objections were untimely filed just one business day before the hearing, the trial court abused its discretion in ruling on the objections without a hearing on the objections, and the objections were meritless, "scatter-shot complaints." The Prestonwood Entities failed to preserve error for review of this issue, however, because they did not seek a continuance of the hearing or file a response to the objections before the court ruled. *See Cunningham v. Anglin*, No. 05-12-00039-CV, 2014 WL 3778907, at *3 (Tex. App.—Dallas July 31, 2014, pet. denied) (mem. op.) (although a trial court should not sustain late-filed objections without giving the other party an opportunity to amend, "the other party should ask the trial court for a continuance for time to respond to the objections" and failing to do so waives error on appeal); *Webster v. Allstate Ins. Co.*, 833 S.W.2d 747, 750 (Tex. App.—Houston [1st Dist.] 1991, no writ.) (same). Further, the record reflects that the Prestonwood Entities did not address the objections in the hearing. At the opening of the hearing, counsel for the Prestonwood Entities indicated that they would address the objections during the hearing. When the Prestonwood Entities argued points addressed in the Campos affidavit during the hearing, counsel for the

–33–

Estate Representatives reissued the objections. The Prestonwood Entities did not respond or offer any argument in defense of the objections. Consequently, they have failed to preserve error for review. I would overrule their fourth issue concerning the striking of the Campos testimony.

Without the Campos testimony, the remaining record will not support the Prestonwood Entities' contention that the FAA applies here because there is no evidence that the leases evidence a transaction involving interstate commerce. *See* 9 U.S.C. § 2. Without such evidence, the Prestonwood Entities' assertion that the FAA controls the arbitration agreement fails as a matter of law. *See Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 281 (1995) (the transaction evidenced by the contract must in fact involve interstate commerce); *Eastland v. Camp Mystic, Inc.*, Nos. 04-08-00675-CV, 04-08-00741-CV, 2009 WL 260523, at *3 (Tex. App.—San Antonio Feb. 4, 2009, pet. denied) (mem. op.) (lease between two Texas entities for real property on which one party operated a summer camp did not evidence a transaction involving interstate commerce).

Moreover, under this record I would conclude interstate commerce is not implicated here. All parties involved in the suit are Texas residents, the leases were signed in Texas, the leases were to be performed in Texas only, the leased premises are located in Texas, the leases are governed by Texas law, and the underlying dispute does not relate in any way to interstate commerce. The agreements, therefore, cannot be governed by the FAA. Accordingly, we conclude the trial court

did not abuse its discretion by denying the Prestonwood Entities' motion to compel arbitration under the FAA and by staying the AAA proceeding. I would overrule their third issue.

## III. Enforceability of the Arbitration Agreements under the TAA

As discussed above, by granting the motions to stay arbitration and denying the pleas in abatement, the trial court necessarily determined that the TAA governed the arbitration agreements but those agreements were nonetheless unenforceable under the TAA. The Estate Representatives provided multiple bases in support of their argument that the arbitration agreements were invalid and unenforceable, including the agreements were illusory, unconscionable, and did not comply with signature requirements set out in the Act related to personal injury claims. Because the trial court did not enter findings of fact or conclusions of law to explain its ruling, we must uphold the trial court's decision on any appropriate legal theory urged below. *Rockoff*, 509 S.W.3d at 531–32; *Lakeway Homes*, 2016 WL 3453559, at *3.

A written agreement to arbitrate is valid and enforceable under the TAA if the agreement is to arbitrate a controversy that: (1) exists at the time of the agreement; or (2) arises between the parties after the date of the agreement. TEX. CIV. PRAC. & REM. CODE § 171.001. The TAA controls the dispute where, as here, the contract does not relate to interstate commerce and was executed between Texas residents in Texas, to be performed in Texas. Therefore, I would hold that the TAA controls this dispute. *See, e.g., Chambers v. O'Quinn*, 305 S.W.3d 141, 150 (Tex. App.—Houston

[1st Dist.] 2009, pet. denied) (TAA controlled dispute despite contract's references to both FAA and TAA where contract did not relate to interstate commerce); *see also In re Godt*, 28 S.W.3d 732, 738–39 (Tex. App.—Corpus Christi–Edinburg 2000, orig. proceeding) (same).

However, when a party's claim is for personal injury, an arbitration agreement is unenforceable as to the personal injury claim unless: "(1) each party to the claim, on the advice of counsel, agrees in writing to arbitrate; and (2) the agreement is signed by each party and each party's attorney." TEX. CIV. PRAC. & REM. CODE § 171.002(a)(3), (c). It is undisputed that the leases at issue here are not signed by the Estate Representatives in their individual capacities, or by the decedents' attorneys, the Estate Representatives' attorneys, or the Prestonwood Entities' attorneys. As a result, the arbitration agreements are unenforceable. Accordingly, we conclude the trial court could reasonably determine the TAA governs the arbitration agreements but renders those agreements unenforceable to the personal injury claims asserted here. *See, e.g.*, *In re Godt*, 28 S.W.3d at 738–39 (concluding TAA controlled dispute and holding that the arbitration agreement is unenforceable under the TAA because it did not meet the requirements of section 171.002(c)). I would overrule the Prestonwood Entities' second issue.

## IV.    The Original Proceedings

Finally, I would address the Prestonwood Entities' petitions for writ of mandamus. To be entitled to mandamus relief, a relator must show the trial court has

–36–

clearly abused its discretion and relator has no adequate appellate remedy. *In re Prudential Ins. Co.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). Mandamus is the appropriate procedure by which we may review a trial court's ruling on a motion to compel arbitration under the common law. *In re Swift Transp. Co.*, 311 S.W.3d 484, 491 (Tex. App.—El Paso 2009, orig. proceeding); *In re Paris Packaging*, 136 S.W.3d at 727 & n. 7.

The Prestonwood Entities contend the trial court abused its discretion in staying arbitration "because the claims should be arbitrated under Texas common law." However, it is my conclusion that, under the TAA, the trial court did not err in staying the AAA proceedings and denying the pleas in abatement. Therefore, no discussion of whether the order was permissible under the common law is necessary. *See Miller v. Brewer*, 118 S.W.3d 896, 899 (Tex. App.—Amarillo 2003, no pet.) (discussion of whether order was permissible under the FAA or common law unnecessary because court concluded order was permissible under the TAA). I would deny the petitions for writ of mandamus.

## CONCLUSION

For these reasons, and for the second time, I would conclude the trial court did not abuse its discretion by granting the motions to stay arbitration and denying the pleas in abatement.

Because the majority continues to reach the opposite conclusion, I dissent again.

/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
JUSTICE

Burns, C.J., and Molberg, Nowell, Carlyle, and Garcia, JJ., join this dissenting opinion.

200380DF.P05